CONLEY, J.T.C.
Plaintiff Exxon Corporation filed an action in the Tax Court of New Jersey against three named municipalities individually, and against them as class representatives of all taxing districts in the State of New Jersey in which Exxon has underground fuel storage tanks, and also against the Middlesex County Board of Taxation and Sidney Glaser, Director of the Division of Taxation.
The complaint is in four counts. The first count seeks an order certifying the action as a class action and designating the three named municipalities as representatives of that class of defendants. It seeks a declaration that plaintiff’s underground fuel storage tanks are personal property taxable under the New Jersey Business Personal Property Tax Act, N.J.S.A. 54:11A-1 et seq., and not real property subject to local taxation pursuant to N.J.S.A. 54:4-1 et seq. The first count also seeks a judgment vacating and setting aside all assessments with respect to underground fuel storage tanks as real property and setting aside a directive of the Middlesex County Board of Taxation ordering *219 all assessors in Middlesex County to assess all underground fuel storage tanks as real property. Lastly, the first count seeks a permanent injunction restraining the municipal defendants, including all class members, from assessing underground fuel storage tanks as real property.
The second count challenges a determination of the Director of the Division of Taxation in which he purported to advise all assessors, county boards of taxation and gasoline companies that all underground fuel storage tanks were to be assessed locally as real property as of January 1,1982, and not as personal property. The second count seeks a declaration that the Director’s determination is invalid, unenforceable and null and void.
The third count of plaintiff’s complaint in the Tax Court challenges a regulation adopted by the Director of the Division of Taxation as an amendment to N.J.A.C. 18:24-24.2. The amendment provided that underground fuel storage tanks and concrete poured for the purpose of preventing such tanks from floating would no longer be deemed personal property within the intent of the Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq. That count seeks a declaration of the Tax Court that the Director’s amendment to his regulation is invalid, unenforceable and null and void.
The fourth count seeks to have any change in the assessment of underground fuel storage tanks take effect no earlier than the tax year 1983.
Plaintiff filed a certification of one of its officers setting forth certain facts. The certification states that there are 346 municipalities in the State in which plaintiff has underground fuel storage tanks, in all 21 counties. In the complaint itself plaintiff has set forth in count one that its local property tax assessments with respect to specific service station properties were increased in 1982 because of an additional assessment placed on underground storage tanks. Plaintiff alleges — and I will treat it as true for purposes of this proceeding — that it has been advised of an increase in the assessed values of its service station properties in the three named defendant municipalities *220 and that all of the increases are attributable to the assessment of underground fuel storage tanks as real property. In paragraph 18 of count one of the Tax Court complaint plaintiff alleges further — and I will treat it as true — that as of May 1982 plaintiff was aware of 24 taxing jurisdictions which had made 1982 real property tax assessments on stations owned or leased by plaintiff in a total amount of $8,394,445, of which $648,660 is attributable to the inclusion in the assessments of underground fuel storage tanks as real property. Plaintiff alleges that in addition to the particular assessments of which it had knowledge as of May 1982, there were increased assessments in other municipalities for the same reason. In court, counsel for Exxon represented that plaintiff is aware of such increased assessments in 29 municipalities throughout the State of New Jersey.
In the matter filed in the Tax Court plaintiff filed a notice of motion by which plaintiff seeks to have this matter certified as a class action so that plaintiff might proceed against the three named taxing districts as well as the other named defendants. Plaintiff also seeks an order prescribing the form and manner of notice to be given all class members, which would include the 346 taxing districts in the State in which Exxon has underground fuel storage tanks. Lastly, and very significantly, plaintiff seeks an order providing that compliance with the notice requirements established by the court as a result of this motion shall be deemed as to each taxing jurisdiction to which such notice is given as the timely filing by plaintiff of a tax appeal, pursuant to N.J.S.A. 54:3-21 or N.J.S.A. 54:4-63.39, as may be applicable, challenging the assessment of its underground fuel storage tanks as real property.
The Attorney General, representing the Middlesex County Board of Taxation and the Director of the Division of Taxation, filed a notice of a cross-motion seeking to have the complaint dismissed for the reason that the Tax Court lacks jurisdiction of the matter and for the reason that plaintiff has not exhausted its administrative remedies. The three named municipal defendants have all joined in the Attorney General’s cross-motion.
*221 The court initiated a telephone conference call with all attorneys in the Tax Court matter on July 8, 1982; the conference call was recorded. In that colloquy the court raised certain issues that were troubling it, particularly with respect to the jurisdiction of the Tax Court. Subsequent to that telephone conversation, and as a direct result of it, plaintiff filed a complaint in the Law Division of the Superior Court in Middle-sex County naming as defendants the three municipal defendants it had named in the matter filed in the Tax Court. The Superior Court complaint has two counts which are, almost verbatim, the same as counts one and four of the complaint filed by plaintiff in the Tax Court. Plaintiff has made clear in a certification filed by one of its attorneys that the Law Division action was filed in order to be certain that a matter would be pending in the Superior Court in the event the Tax Court decided it did not have jurisdiction over the same issue. Plaintiff requested that the Superior Court matter be assigned to a judge of the Tax Court temporarily assigned to the Law Division of the Superior Court and that an order to show cause be made returnable before that judge so that the two matters could be considered by the same judge, if not simultaneously at least in close connection. Pursuant to that request, the Acting Assignment Judge of the Superior Court for Middlesex County signed an order to show cause in which the named defendants in the Superior Court action were directed to show cause why certain specific relief, which is also the relief that plaintiff seeks in its motion in the Tax Court, should not be granted. Consequently, this court heard extensive argument by counsel for all parties in both the Tax Court action and the Superior Court action. I have treated them as a consolidated proceeding in the interests of economy of judicial time as well as in the interests of the time and effort and expense of counsel and parties on both sides.
Given these preliminary statements, the essence of what is before the court is a request by plaintiff Exxon as a taxpayer to be able to proceed in one action in a trial court to have its assessments for 1982 modified by a judgment of this court *222 insofar as the assessments are affected by the taxation of underground fuel storage tanks as real property. Plaintiff seeks to have this decided in the trial court rather than before the various county boards of taxation. See N.J.S.A. 54:3-21; N.J.S.A. 54:4-63.39. Three basic issues have been discussed in connection with this proceeding. The first issue is whether the court has the jurisdiction to entertain the action at all. Another is the basic issue of the requirement that a plaintiff exhaust its administrative remedies, if such remedies are available, before the court will assume jurisdiction in a case. The third issue pertains to plaintiff’s class action application.
With respect to the jurisdiction of the Tax Court, it is clear, in general, that the Tax Court has jurisdiction of declaratory judgment actions pursuant to the Declaratory Judgment Act, N.J.S.A. 2A:16-50 et seq. I perceive that counts two and three of plaintiff’s complaint in the Tax Court seek, in effect, a declaratory judgment. Counts one and four of the Tax Court complaint, however, seek more than a declaratory judgment; they seek, in effect, a change in plaintiff’s assessments for the year 1982 without plaintiff having first gone to the county boards of taxation in those counties where it has underground fuel storage tanks.
It is my conclusion with respect to the counts seeking to have a change in plaintiff’s assessments for 1982 that the court has no jurisdiction. The statutory authority for the Tax Court is clearly set forth; it provides that the Tax Court may review assessment determinations and other determinations of county boards of taxation. N.J.S.A. 54:2-35; N.J.S.A. 54:2-39. The other relevant statute applicable to the jurisdiction of the Tax Court is N.J.S.A. 54:3-21. That section is the basic statute that requires a taxpayer to go to the county board of taxation to have his assessment reviewed. The Legislature recently amended that provision to provide that a taxpayer may go directly to the Tax Court in the event that the assessment sought to be modified is in excess of $750,000. Plaintiff in the present case does not challenge any assessment in excess of $750,000 and, *223 therefore, its complaint does not come within the direct appeal provision of N.J.S.A. 54:3-21. The general jurisdictional statement in the act establishing the Tax Court is also of no assistance to plaintiff. That statute is N.J.S.A. 2A:3A-1 et seq. That statute provides, in part, that the court shall have jurisdiction to hear and determine all appeals of such character as now are taken to and heard and determined by the Division of Tax Appeals in the Department of the Treasury. N.J.S.A. 2A:3A-3. There is nothing in this or in any other provision in the Tax Court act which would appear to grant jurisdiction to the Tax Court to entertain plaintiff’s complaint insofar as it seeks a judgment modifying its assessments for 1982.
The way I understand plaintiff’s request for relief in paragraphs two and three of its complaint in the Tax Court action, which I have characterized as a declaratory judgment application, plaintiff would not be satisfied with a declaratory judgment that did not have any impact for 1982. I think the overall thrust of plaintiff’s application as contained in the Tax Court complaint is to have its assessments changed for 1982 without having to go to the county tax boards, and I find, as a matter of law, that the Tax Court does not have jurisdiction to entertain that application.
Plaintiff’s Law Division complaint, which plaintiff characterizes as a combination of an action in lieu of prerogative writs and a declaratory judgment action, seeks also to have its assessments modified for 1982. Again, plaintiff has obviously not gone to the county boards of taxation. The Superior Court, Law Division, would seem to have the inherent jurisdiction, as a court of general jurisdiction, to entertain cases pertaining to tax assessments. There have been cases over the years in which the Superior Court has entertained such matters. However, although it is not jurisdictional, there is a basic doctrine that a plaintiff shall not be permitted to proceed in the Superior Court if, in fact, there is an available remedy in administrative agencies established by the Legislature. Defendant municipalities have invoked that doctrine as a defense to plaintiff’s Law Division proceeding.
*224 This court has reviewed carefully certain major opinions of the courts of this State with respect to the exhaustion of administrative remedies doctrine in connection with both prerogative writ matters and actions pursuant to the Declaratory Judgment Act. It is the conclusion of this court that the legal standard pertaining to the exhaustion of administrative remedies is almost the same, if not the same, in both contexts.
The first case I place reliance upon is Ward v. Keenan, 3 N.J. 298, 70 A.2d 77 (1949). In that case Chief Justice Vanderbilt, in the first few years after the new State Constitution had been adopted, took the opportunity to expound at great length about prerogative writs and the doctrine of exhaustion of administrative remedies. He invoked the court rule which is now R. 4:69. The court in that case required the exhaustion of administrative remedies. In doing so the court made it clear that one of the concerns of the court was with the undue amount of time that administrative proceedings sometimes took, although in the particular factual situation of the case before it the court did not find the time factor to be a problem.
In Nolan v. Fitzpatrick, 9 N.J. 477, 89 A.2d 13 (1952), also a prerogative writ action, Chief Justice Vanderbilt again discussed the problem of delay in administrative agencies. The court quoted from a law review article in which the following was stated:
We have waited too long and wasted too much time and money with administrative proceedings that drag on in excess of two years under procedures that are manifestly improper; it is time to reassess the situation and make provision to avoid a continuation of an unjust and unconscionable practice. More than one private litigant has died on the vine in an attempt to exhaust an inexorably inexhaustable (in time) administrative remedy, when had there been access to the courts the manifest justice of his case would have removed the stigma. [Id. at 486, 89 A.2d 13]
It is apparent from the quoted language that our Supreme Court was concerned with undue time consumed in administrative proceedings. In Nolan v. Fitzpatrick the court found that solely a question of law was involved and as a consequence it did not require plaintiffs to exhaust their administrative remedies. However, the court said that special circumstances had to be *225 present before it would permit a plaintiff to proceed in court without having first exhausted its administrative remedies.
In Roadway Express v. Kingsley, 37 N.J. 136, 179 A.2d 729 (1962), which was construed by the court to be both a prerogative writ and a declaratory judgment action, the court said that the strong policy regarding the exhaustion of administrative remedies applies equally to both types of action. The court cited Central R.R. Co. of N.J. v. Neeld, 26 N.J. 172, 139 A.2d 110 (1958), cert. den., 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1371 (1958), for the proposition regarding tax assessment cases that there was a “wholly adequate administrative appeal” and that in that particular case there had been no showing that justice required an earlier judicial intervention than would be available under the normal review procedure. 37 N.J. at 139, 179 A.2d 729. The court said with respect to the Roadway Express case: “Nothing before us in anywise suggests that pursuit of the administrative remedies will entail any undue delay or expense or any irreparable harm to the plaintiff.” Id. at 142, 179 A.2d 729.
In Matawan v. Monmouth Cty. Bd. of Taxation, 51 N.J. 291, 240 A.2d 8 (1968), the court did not require the exhaustion of administrative remedies. Plaintiff in that case challenged the apportionment of funds between taxing districts insofar as those funds went to pay for the cost of a regional school district. Plaintiff also argued that the act creating regional school districts was unconstitutional. The court held that since what was involved was the interpretation of a statute and a constitutional question, further use of administrative expertise would be an idle gesture. It is also clear that in that case there were two administrative agencies and two separate administrative review procedures that were available, one through the county tax board and the Division of Tax Appeals and the other through the Commissioner of Education and the State Board of Education.
In East Orange v. Livingston, 102 N.J.Super. 512, 246 A.2d 178 (Law Div.1968), aff’d o.b. 54 N.J. 96, 253 A.2d 546 (1969), Judge *226 Handler, now a Justice of the State Supreme Court, in an action in lieu of prerogative writs tp change certain assessments and also to have certain property treated as exempt, heard the case on the merits. The standard that the court applied with respect to exhaustion of administrative remedies appears in 102 N.J.Super. at 519-521, 246 A.2d 178. The court pointed out that the question before it involved important and novel questions of law involving the construction of the Farmland Assessment Act, N.J.S.A. 54:4-23.1 et seq., and the application of that act to a municipally-owned watershed. The court said that normally there would be a requirement for evidence to be taken and facts to be found before a final determination could be made of the legal issue, and that a case in such a posture must be regarded as within the competence of the appropriate administrative agency having jurisdiction to adjudicate the controversy. In specifying when it would not consider exhaustion of administrative remedies to be required, the court mentioned relative delay and expense, possible prejudice to any of the litigants, the public interest, the nature of the issues and the extent to which the discretion of the administrative agency should be invoked in an adjudication. Judge Handler then said, and I stress these words, “[m]ore importantly,” the pretrial order in his case had required defendants to raise the issue of exhaustion by pretrial motion and they had not done so; they made their motion to dismiss for failure to exhaust administrative remedies at the commencement of the trial and a full plenary trial was held before the motion was ruled on. The court found that after three days of testimony, with the production of considerable expert and lay testimony and other evidence, the interests of justice dictated that “the controversy be presently and expeditiously resolved on the merits by the court.” 102 N.J.Super. at 521, 246 A.2d 178.
The last case on which this court relies in the analysis to follow is Registrar & Transfer Co. v. Taxation Div. Director, 166 N.J.Super. 75, 398 A.2d 1335 (App.Div.1979), certif. den. 81 N.J. 63, 404 A.2d 1161 (1979), a declaratory judgment action involving a construction of the Sales and Use Tax Act, N.J.S.A. *227 54:32B-1 et seq. Neither the Chancery Division nor the Appellate Division in that case required administrative remedies to be exhausted. The Appellate Division found that it had been appropriate for the trial court to exercise jurisdiction because “there existed a bona fide controversy that had not yet reached the stage at which either party could have sought a coercive remedy” before an administrative agency. Id. 166 N.J.Super. at 78, 398 A.2d 1335.
Bearing in mind the principles enunciated by these courts, it is my conclusion that plaintiff Exxon should exhaust its administrative remedies. The reasons I have come to that conclusion are numerous. All of the cases recited above mention, and most of them stress, the factor of undue delay when the courts have not required plaintiffs to exhaust their administrative remedies. In the present matter, the question of delay is not significant. The county boards of taxation have to decide these cases between the period of August 15 and November 15,1982. N.J.S.A. 54:3-21 and 54:3-26. As of November 16 plaintiff will have the judgments of the county boards of taxation in hand or in the mail. At that point in time it will know how many of these cases need to be pursued to the Tax Court. It is the impression of this court that the cases that will need to be pursued to the Tax Court will be far fewer than the hundreds of cases that have been alluded to in the course of the proceedings thus far. It is noteworthy, furthermore, that there is only one level of administrative agency in this statutory framework that has to be dealt with, and that is the county boards of taxation. All of the local property tax cases referred to above dealt with a statutory framework that involved not only the county boards of taxation but also the Division of Tax Appeals. Now a litigant need only go to the county board of taxation before he can proceed directly to a court.
Another reason for requiring plaintiff to exhaust its administrative remedies in this case is that the administrative inconvenience that plaintiff has alluded to and, in fact, relied on is due, in this court’s opinion, to plaintiff’s substantial size and to the fact that plaintiff has holdings throughout the State. The *228 inconvenience is not due to the system itself, or at least not due exclusively to the system itself. If any taxpayer with only one or only a few underground fuel storage tanks wanted to challenge his assessment he could go first to the appropriate county board of taxation and then to the Tax Court, and he would get an expeditious and just review of the merits of the assessment. The peculiarity in the present case is that plaintiff owns hundreds of underground fuel storage tanks. It is not apparent to this court that the standard of review or the ease of access to the judicial system should be different depending on the size of a taxpayer or the number of its properties.
One other point that seems to me to be very significant is that there may well be valuation problems that might have to be resolved in the context of the appeals challenging plaintiff’s assessments, not only on its underground fuel storage tanks but also on plaintiff’s service stations in their totality. The complaint in the Tax Court matter refers to assessments on plaintiff’s properties in excess of $8,000,000, only some $600,000 of which is applicable to underground fuel storage tanks. It would appear to the court that plaintiff might well want to challenge the valuation aspects of its assessments for reasons other than the treatment of underground fuel storage tanks as real property. This court does not want to entertain those kinds of cases before the matters have gone through the normal process to the county boards of taxation. The county boards of taxation were established to screen such cases and to filter as many out as possible.
Another reason I will require the exhaustion of administrative remedies is that it is not apparent to me at this posture of the case which assessments in which taxing districts would be affected by a blanket order of this court such as is requested by plaintiff. As of now, plaintiff knows of 29 taxing districts where it has this issue at hand. There are some hundreds of other districts where it may also have the issue. I think the better practice would be for the taxpayer to find out which specific assessments it wants to challengé and to focus on those at the county boards of taxation. Moreover, I am not convinced *229 that the underground fuel storage tanks really will be relevant when it comes to determining value and reviewing assessments pursuant to the income approach as set forth with respect to service stations in the case of Humble Oil & Refining Co. v. Englewood Cliffs, 71 N.J. 401, 365 A.2d 929 (1976).
I am also of the opinion that county tax board proceedings would not be futile, as suggested by plaintiff. County boards of taxation are bound in the area of substantive law by legal advice rendered by the Attorney General and not by internal rulings and advice from the Director of the Division of Taxation. In the opinion of this court plaintiff has a fair opportunity to prevail on the merits at the county boards of taxation. I would also note that the rulings or determinations that were made by the county boards and the Director in this case were made in an administrative capacity and not in a quasi-judicial capacity. It is my firm belief that the administrative agencies, when acting in a quasi-judicial capacity, will consider fully all facts and issues as raised by the litigants even if they have previously made an administrative ruling to the contrary.
I think it is important for the Tax Court and taxpayers and all those involved in the tax system to strive to maintain the integrity of that system. It is important for the court to require the exhaustion of administrative remedies except in very clear cases when the interests of justice warrant otherwise. If the court were to grant what plaintiff seeks here, others would take notice from this proceeding that they could try to bypass county boards of taxation or try to speculate as to what county boards of taxation would do without having gone there. This court is of the opinion that the Legislature did not intend that kind of activity to occur; it intended litigants to go first to county boards of taxation to deal with the millions of individual assessments throughout the State of New Jersey. Plaintiff argues that this will require a piecemeal approach on its part, but I think that is unavoidable. It may well be when these matters are tried before the county boards of taxation that there will be factual differences pertaining to the various underground fuel storage tanks. It is not clear to me from the limited factual *230 record adduced thus far that the factual situation would be the same with respect to each and every underground fuel storage tanks. The facts first have to be set forth in individual proceedings, as they were in Bayonne v. Port Jersey Corp., 79 N.J. 367, 399 A.2d 649 (1979), and Koester v. Hunterdon Cty. Bd. of Taxation, 79 N.J. 381, 399 A.2d 656 (1979). These were both decisions of the New Jersey Supreme Court in 1979 involving the issue of the taxation of real property versus personal property. Both cases went through the administrative route tp the county tax boards and Division of Tax Appeals before they went to court.
It is not necessary for the court to reach the question of plaintiffs class action application because I am going to require plaintiff to exhaust its administrative remedies. Nonetheless, I will deal with the application very briefly. The overall purpose of the class action proceeding would be to obtain some kind of a uniform ruling in a situation which might otherwise have a multiplicity of proceedings and results. See E.4:32-l et seq. However, the present circumstances are going to result in a lack of uniformity no matter how the matter is presented to the administrative agencies and the courts. Plaintiff Exxon has some percentage of all of the underground fuel storage tanks in the State of New Jersey. Even if the court were to assume jurisdiction and grant plaintiff’s class action application, that would at best give some uniformity of treatment as to Exxon’s assessments with respect to underground fuel storage tanks; it would not do anything for the many other property owners and taxpayers who are in circumstances similar to plaintiff’s, including all of the other major oil companies. In any event, the class action procedure might well turn out to be more cumbersome than the normal procedure of appeals to county boards of taxation. I say that because at the present time plaintiff is aware of only 29 municipalities in which it faces the problem of the taxation of its underground storage tanks as real property. The class action procedure would involve notification of 567 taxing districts, or at least a substantial number of taxing districts where plaintiff has its underground fuel storage tanks. *231 This would impose some burden on the three defendant taxing districts that perhaps would be unfair. On the other hand, focusing on individual assessments through the county board procedure can be very straightforward, very efficient and very expeditious.
For the foregoing reasons I will grant the Attorney General’s motion to dismiss the complaint filed in the Tax Court and I will grant the motions of the three municipal defendants to dismiss the complaint filed by plaintiff in the in the Law Division. Plaintiff must exhaust its administrative remedies before the county boards of taxation. I will also, of course, deny plaintiff’s motion in the Tax Court seeking both a class-action certification and a ruling that its single complaint would constitute tax appeals that could have the result of changing its 1982 assessments. For the same reasons I have given above I will also deny the request sought by plaintiff in connection with the order to show cause issued by the Acting Assignment Judge of the Superior Court for Middlesex County.