IN THE MATTER OF THE APPLICATION OF MRS. WIL-
LIAM G. WELLHOFER AND OTHER FREEHOLDERS OF
THE CITY OF ATLANTIC CITY, IN THE COUNTY OF
ATLANTIC, FOR A SUMMARY INVESTIGATION INTO
THE MUNICIPAL EXPENDITURES OF SAID CITY.

Argued June 28, 1948—Decided July 6, 1948.

Before CASE, CHIEF JUSTICE, sitting as a single justice pursuant to the statute.

For the City of Atlantic City, *William Elmer Brown, Jr.*

For the respondent freeholders, *Thomas D. Taggart, Jr.*

CASE, CHIEF JUSTICE. The City of Atlantic City and its officials seek a writ of *certiorari* to review certain orders made

by Mr. Justice Eastwood directing an investigation into the affairs of Atlantic City pursuant to *R. S.* 40 :6–1, *et seq.* On or about April 2d thirty-four freeholders of the municipality presented to the justice their affidavit making seventeen specific charges of unlawful or corrupt expenditures of money and requesting a summary investigation. A rule to show cause issued directed against the City of Atlantic City and returnable on April 9th. On the return day the city asked for and obtained a postponement to April 21st. On the latter day the city presented, in opposition to the proposed investigation, seventeen affidavits containing approximately 500 pages. Counsel for the applicants, having been served with those voluminous proofs on the preceding evening, presented a rebuttal affidavit by an affiant not one of the thirty-four applicants. Opportunity, not availed of, was given to the city to submit proof responsive thereto. On May 19th counsel were served with Mr. Justice Eastwood's opinion setting forth his conclusion that a summary investigation should be had and enumerating at length nine classes of incidents, all of them grounded in the original affidavit of applicants upon which that conclusion was based, and specifying each class as sufficient in itself to justify an investigation. On May 22d the order for the investigation issued. It is not clear why the application is made to me. It could have been made to Mr. Justice Eastwood. *Newark* v. *Parker,* 119 *N. J. L.* 225. It was tentatively taken up with Part II of the Supreme Court but, I gather, not very earnestly because a day for hearing the application was not set. Nevertheless it is before me, sitting as a single justice hearing state-wide motions under the summer schedule, and I dispose of it as follows.

Nine points were argued why the writ should issue.

It is first said that the power to be exercised by the justice under the statute is discretionary. That may be conceded.

Based thereon, it is secondly said that the justice should act only on the affidavit sworn to and subscribed by the applicants. Again, for the purposes of the argument, I am following that contention to the point that the justice should find reason for the investigation within the framework of

the applicants' affidavit; and this the justice clearly and specifically did. I am constrained, however, to observe that the statute requires of the applicants only that they have "cause to believe" and that I find no valid objection to the submission and use, particularly on rebuttal, of a supplemental affidavit by another fortifying the grounds for such belief.

It is next said that the city was erroneously denied the right and privilege of interrogating the applicants. I discover no absolute right in the municipality to make such interrogation. It was intimated in *Park Ridge* v. *Reynolds,* 74 *N. J. L.* 449, that under chapter 97, *Pamph. L.* 1898, the justice might be required to institute an inquiry into the truth of the affidavit upon which his jurisdiction had been invoked to the extent of discovering whether he had been imposed upon. But I am referred to no authority for the precise undertaking upon which the city would here embark. Mr. Justice Eastwood is said by counsel for the city to have ruled that the application was tardily made; and I am not supplied with a sufficiently detailed statement of the proofs and the chronology of the proceedings generally to justify a contrary finding. Clearly, the justice was convinced by the proofs laid before him that he was not imposed upon.

The fourth and fifth points were, respectively, that "The power conferred by the statute was erroneously construed and applied" and that "The orders here made are the result of the application of erroneous principles or rules of law." The points overlap each other and also point three; and they are grounded, I believe, in the failure to sense the underlying purpose of such an investigation and the function that the initial step, namely, the order to make the investigation, has in the proceedings. True, the inquiry is not to be lightly or perfunctorily entered upon, and there should be enough in the proofs to support the exercise of judicial discretion; but on the other hand it would throw the whole proceeding out of joint to require, at the threshold, that character of proof which is really the final objective to be educed by the investigation. Theoretically what the applicants present is their belief that there has been lawless or

corrupt expenditure of public funds, with sufficient authentication to weight the discretion of a Justice of the Supreme Court toward making a summary investigation. The greater the need for such an undertaking, the greater the impulse for defensive dilatory tactics, a truism too obvious for further detail. In *North Bergen Township* v. *Gough,* 107 *N. J. L.* 424, 427, the purpose and function of the statute is thus described:

"The statute in its essence has been on the books for more than fifty years. *Pamph. L.* 1879, *p.* 27. It was said in *Hoboken* v. *O'Neil,* 74 *N. J. L.* 57, that 'this statute is evidently a very useful act. It enables those entitled to know to ascertain the true condition of municipal expenditures.' The statute is no less useful now than then. The legislature clearly meant this statute to be the channel whereby a minority, having reason to suspect the unlawful or corrupt use of the moneys of the municipality, may present their apprehensions to a justice of the Supreme Court whereupon that high judicial officer shall make an investigation and thereupon, if he be satisfied of the propriety of so doing, may at his discretion appoint others, experts, to prosecute the investigation. There was thus set up a *quasi*-judicial method, not of charging an offense or causing trial thereof, but of ascertaining, and if so the judicial officer should determine, of publishing the facts of a very particular and vital phase of governmental activity, namely, the handling of public funds. In any event the investigation may be regarded as an effort to ascertain the truth of a charge involving the swindling of the government out of its money, and this, as was indicated in *Ex Parte Hague,* 150 *Atl. Rep.* 322, is a proper subject of inquiry."

Points six and seven go to matters which are incidents to the investigation, and will. I have no doubt, be met as the inquiry proceeds and do not need be anticipated.

Under point eight it is argued that the court erroneously approved the bond. The statutory provision as to the bond is in *R. S.* 40:6–2 and is as follows:

"The justice may, if he deems it advisable, require the applicants to furnish a bond to be filed with the county clerk

346

in such sum as he may deem necessary for the payment of the costs and expenditures of the investigation."

Thus, it was optional with the justice whether any bond should be required and what the amount of the bond, if required, should be. Mr. Justice Eastwood required bond in the amount of $5,000. The applicants offered to deposit that amount in cash. The city objected upon the ground that the statute contained no provision for a cash deposit in lieu of bond. However technical that objection may have been, it was made effective. Thereupon the applicants presented the present bond which carries two of the applicants as principals and a surety company authorized to do business in this state as surety. The security of the bond is not questioned. The argument that all of the applicants must be signatories on the bond lacks substance.

Finally, as point nine, it is contended that the statute itself is unconstitutional. The contrary has been held too often to require fresh consideration here. *North Bergen Township* v. *Gough, supra; Newark* v. *Parker, supra; Hoboken* v. *O'Neill*, 74 *N. J. L.* 57; *Park Ridge* v. *Reynolds*, 74 *Id.* 449.

The application for a writ of *certiorari* is denied.