18 N.J. Super. 197 (1952)
87 A.2d 43
IN THE MATTER OF THE SWORN APPLICATION OF MRS. WILLIAM G. WELLHOFER AND OTHER FREEHOLDERS OF THE CITY OF ATLANTIC, IN THE COUNTY OF ATLANTIC, FOR A SUMMARY INVESTIGATION INTO THE MUNICIPAL EXPENDITURES OF SAID CITY.
Superior Court of New Jersey, Appellate Division.
Argued February 4, 1952.
Decided March 5, 1952.
*200 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Joseph B. Perskie argued the cause for petitioners-appellants, Stephen L. Valore and Drusilla T. Maxwell, administratrix c.t.a. under the will of Thomas D. Taggart, Jr. (Messrs. Perskie and Perskie, attorneys).
Mr. Murray Fredericks argued the cause for respondent, City of Atlantic City.
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
On March 29, 1948, an application for an investigation of the affairs of Atlantic City was made by 34 freeholders and taxpayers pursuant to the provisions of R.S. 40:6-1, et seq. On May 22, 1948, such investigation was ordered. In re Wellhofer, 137 N.J.L. 165 (Sup. Ct. 1948). Atlantic City and its officials then sought a writ of certiorari to review the order directing the investigation, but the writ was denied on July 6, 1948. In re Wellhofer, 137 N.J.L. 342 (Sup. Ct. 1948). By order of court, experts were appointed to prosecute the investigation. In August, 1950, the experts appointed by the court filed their final report, orders were entered making final allowances to them, and the investigation was concluded.
Thereafter, the two petitions which are involved in these appeals were filed. From the petitions it appeared that Stephen L. Valore, a member of the bar, was originally *201 consulted by certain taxpayers who desired an investigation into the municipal expenditures of Atlantic City. Stephen L. Valore and these taxpayers retained Thomas D. Taggart, Jr., a member of the bar, to appear and present the request for the investigation. The Valore petition set forth that from September, 1947, until June 27, 1948, Valore performed services in connection with legal research and in connection with the factual investigations involved in securing the order for the investigation, and it sought the allowance to him of a reasonable sum for such services. The petition on behalf of Taggart set forth that from November, 1947, until June 28, 1948, he performed services in connection with legal research and in connection with the factual investigations involved in the application, and appeared in court for these taxpayers in the proceedings to secure the order for the investigation; and, further, that he continued to perform services for such taxpayers in connection with the investigation until it closed in August, 1950. The petition on behalf of Taggart sought the allowance of $521.04 as out-of-pocket expenses, and a reasonable sum for the services rendered by him. No claim is made that Valore or Taggart performed any service or incurred an expense pursuant to any order or authorization by the court. The court dismissed both petitions.
Appellants argue, first, that under R.S. 40:6-1 counsel for applying taxpayers are entitled to counsel fees and reimbursement for expenditures incurred in connection with a summary investigation into municipal expenditures, both for services rendered and expenditures incurred prior to the appointment of experts under the statute and for services rendered and expenses incurred thereafter until the conclusion of the investigation; and, second, that the provisions of Rule 3:54-7 do not preclude the payment of such counsel fees and expenses incurred if petitioners would otherwise be entitled to such payment under R.S. 40:6-1.
R.S. 40:6-1, in pertinent part, provides that if 25 freeholders and taxpayers shall present to the named judicial *202 officer an affidavit setting forth that they have cause to believe that the moneys of such municipality or county are being or have been unlawfully or corruptly expended, such judicial officer may order a summary investigation into the affairs of such municipality or county, may appoint experts to prosecute such investigation, and may cause the results thereof to be published in such manner as he may deem proper. It then provides: "The costs incurred under this section shall be taxed by the justice, and upon his order be paid by the disbursing officers of the county or municipality whose expenditures may have been investigated."
The provision for investigation of the affairs of a municipality or county, on application of taxpayers, and the provision for payment of costs, substantially as quoted above, have been part of our statute law since 1879 (L. 1879, c. 15).
The proceeding authorized by this statute does not constitute an "action" as that word is generally defined. An action is generally defined as an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. Ballentine's Law Dictionary (2d ed., 1948). The proceeding under this statute is in no sense against any one, and no conclusion therein is to be reached by the judge or the court. Hoboken v. O'Neill, 74 N.J.L. 57, 59, 60 (Sup. Ct. 1906). It results in no decision as to guilt or innocence, or as to any right of person or property. The statute merely provides a quasi-judicial method of ascertaining and, if the judicial officer should so determine, of publishing the facts of a very particular and vital phase of governmental activity. North Bergen Tp. v. Gough, 107 N.J.L. 424 (Sup. Ct. 1931). The general fee bill or bill of costs which applies to the ordinary action does not apply to this proceeding. Baldwin v. Freeholders, 58 N.J.L. 285 (Sup. Ct. 1895).
It is clear that the statute was intended: (1) to provide a method whereby taxpayers, who have cause to believe that moneys of a county or municipality have been *203 unlawfully or corruptly expended, may bring the matter to the attention of a judicial officer; (2) to empower the judicial officer to make an investigation; (3) to empower the judicial officer to appoint experts to prosecute such investigation; and (4) to empower him to fix and order the payment by the county or municipality of the compensation of the experts so appointed, for services performed, expenses incurred and disbursements made in the performance of their duties. North Bergen Tp. v. Gough, above; Baldwin v. Freeholders, above. It is equally clear that all participation by the applying freeholders and their attorney, as such, ends with the determination by the judicial officer that the investigation should be made. The investigation is conducted wholly under the supervision and control of the judicial officer and no payments may be made to any attorney not appointed by the judicial officer for any services rendered, expenses incurred or disbursements made in the course of the investigation, in the absence of any other statutory authorization therefor. Baldwin v. Freeholders, above. It is therefore obvious that any claim made by an attorney for the taxpayers for allowances under R.S. 40:6-1, for services performed or expenses incurred in the course of the investigation, is without foundation in the absence of any authorization therefor by the judicial officer.
To support the claim for payment for services rendered and expenses incurred up to the time of the securing of the order for the investigation, the appellants advance an ingenious, but admittedly novel, argument based upon the provision "the costs incurred under this section shall be taxed by the justice." It is first contended that if an attorney for applying taxpayers is entitled to costs under this section, he must be entitled to compensation for services rendered and expenses incurred in connection with the application, because the word "costs" has been so construed by our courts when applied to the claims of experts appointed by the judicial officer to prosecute the investigation. It is next contended that the attorneys for the applying taxpayers are entitled to *204 costs for services rendered and expenses incurred by them in connection with the making of the application and the securing of the order for the investigation, because the application and the securing of the order are made under the authority given by this section, and thus such services and expenses constitute costs "incurred under this section."
During the 72 years that this statute has been in effect, our courts have uniformly held the purpose of the statute is to keep all proceedings thereunder within the control and supervision of the judicial officer and to impose upon him the duty of keeping all expenses chargeable to the county or municipality within such reasonable limitations as he shall approve. Baldwin v. Freeholders, above; Hoboken v. O'Neill, above. The language "costs incurred under this section" is apt language to describe expenditures which are incurred under a power to incur expenses given under the section, and this is the construction given to this language since its original enactment. The expenditures which the appellants seek to charge against the municipality were not incurred under any power given under the section. Had the words "incurred under this section" been omitted, there might be more force in the appellants' argument. But even then, the essential element of control would be lacking. In this case, the judicial officer had no control or supervision over the petitioners, or over the services performed or the expenses incurred by them. To paraphrase the language of Baldwin v. Freeholders, above, it was not intended that persons, who are not authorized by the judicial officer to do so, should be at liberty to impose a burden, at their own discretion, upon the general taxpayers of the municipality.
Many investigations have been conducted under the provisions of this statute and a few of them have found their way into our reported decisions. Baldwin v. Freeholders, above; Park Ridge v. Reynolds, 73 N.J.L. 116 (Sup. Ct. 1905), affirmed 74 N.J.L. 449 (E. & A. 1907); Hoboken v. O'Neill, above; North Bergen Tp. v. Gough, above; Osborne v. Murphy, 119 N.J.L. 65 (Sup. Ct. 1937); In re Newark, *205 119 N.J.L. 221 (Sup. Ct. 1937); In re Wellhofer, above. The fact that in no one of the prior investigations did the taxpayers or the taxpayers' attorneys or experts claim that compensation should be paid them by the municipality or county for services rendered or expenses incurred on behalf of the applying taxpayers, is significant.
We conclude that the words "incurred under this section" apply specifically and exclusively to the costs arising out of the investigation as authorized by the judicial officer.
This conclusion makes unnecessary any consideration of the effect, if any, of Rule 3:54-7.
The judgment is affirmed.