195 N.J. Super. 608 (1984)
481 A.2d 304
ST. MICHAEL'S PASSIONIST MONASTERY AND ST. PAUL'S BENEVOLENT EDUCATIONAL & MISSIONARY INSTITUTION OF WEST HOBOKEN, N.J., PLAINTIFFS-APPELLANTS,
v.
CITY OF UNION CITY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 20, 1983.
Decided August 22, 1984.
*610 Before Judges BOTTER, PRESSLER and O'BRIEN.
Louis L. D'Arminio argued the cause for appellants (Breslin, Herten & Le Pore, attorneys; Mr. D'Arminio, on the brief).
Herbert H. Fine argued the cause for respondent.
The opinion of the court was delivered by BOTTER, P.J.A.D.
Plaintiffs, taxpayers who own separate parcels of real property in Union City, New Jersey, filed a complaint with the Tax Court on November 29, 1982 to review the assessments levied on their properties for the tax year 1982.[1] Plaintiffs alleged that their properties have always been exempt from taxation since the date of acquisition more than 100 years ago.[2] Defendant moved to dismiss the complaint on the ground that it was not filed on time. Defendant's motion was granted and the tax appeals for 1982 were dismissed by separate judgments entered in the Tax Court without reaching the merits of the claimed tax exemption. This appeal followed and we now remand for reconsideration of the judgments of dismissal.
The date for filing tax appeals with a county board of taxation or the Tax Court is August 15 in any tax year, N.J.S.A. 54:3-21, but the time to file with a county board of taxation may be extended for 30 days with approval of the Director of the Division of Taxation (Director) when a local taxing district has failed to deliver a tax bill to a taxpayer *611 before July 15. N.J.S.A. 54:3-21.4 and -21.5; N.J.A.C. 18:12-5.1. In this case the tax bills were sent to plaintiffs on August 18, 1982 and were received on August 20 and August 23. Accordingly, the Hudson County Board of Taxation, with approval of the Director, extended the time for filing tax appeals to September 15, 1982.[3] However, as previously stated, plaintiffs' complaint was not filed until November 29, 1982. Even if the statutes could be construed to permit an appeal to be filed within 30 days from the date tax bills were mailed to plaintiffs, and we treated the filing in the Tax Court as a filing with the Hudson County Board of Taxation, these tax appeals would have been filed too late as Judge Crabtree held below. We concur also in Judge Crabtree's rejection of plaintiffs' estoppel claim. The facts show that plaintiffs' attorney may have misinterpreted the conversation he had with Union City's assessor in late August 1982. The assessor's certification states that he told plaintiffs' attorney that the assessments would begin in January, meaning January 1, 1982. Plaintiffs' attorney states that he understood the assessor to have said that the tax bill was for the year 1983. In any case, the tax bills themselves showed the net total 1982 taxes due as well as the taxes due for the first half of 1983. The bills also showed the amounts payable on August 1, 1982 and November 1, 1982, as well as on February 1, 1983 and May 1, 1983. In these circumstances Judge Crabtree correctly held that Union City was not estopped from asserting that the appeals were filed out of time.
The conclusions reached in the Tax Court were based on the assumption that the asserted change of use which deprived plaintiffs of their tax exemption occurred before October 1, 1981. Assessments are made as of October 1 of the pretax year. N.J.S.A. 54:4-35. If exempt property becomes non-exempt after October 1 of the pretax year, the procedure for *612 levying a proportionate tax assessment is the same as the procedure used for assessing omitted property. N.J.S.A. 54:4-63.26 and -63.28. See Boys' Club of Clifton, Inc. v. Jefferson Tp., 72 N.J. 389, 400, n. 4 (1977); Shelton College v. Ringwood Boro., 48 N.J. Super. 10 (App.Div. 1957); Jabert Operating Corp. v. City of Newark, 16 N.J. Super. 505 (App.Div. 1951). However, the statutes are unclear as to the procedure to be invoked if the tax exempt status is lost between October 1 and January 1 and the assessor wants to assess the property for the full tax year beginning January 1. Before it was amended in 1974, N.J.S.A. 54:4-63.28 provided that in such cases the property must be assessed and taxed "as of the said January 1 for the whole of the tax year commencing on that date." The amendment appears to have been designed to permit a proportionate tax for a portion of the year beginning with the first day of the month after the exemption was lost. Thus, if the exemption was lost after October 1 in a given year, a proportionate tax could be claimed for two months (November and December) or one month (December) of that tax year, as the case may be. In such a case, the omitted assessment procedure would be used. The same would apply for any change in exempt status occurring after January 1 in any tax year.
However, if a change in tax exempt status occurs before January 1 of the new tax year, and the assessment is intended to apply to the full tax year beginning that January 1, it is not clear that the omitted assessment procedure would have to be invoked. No proportionate tax would be involved. On the other hand, if the property had exempt status on October 1 of the pretax year, that status would apply to the next year's assessment under N.J.S.A. 54:4-35 unless some procedure is invoked to change its status. N.J.S.A. 54:4-63.26 could literally apply to that situation as well as the attempt to levy a proportionate tax for part of a tax year. N.J.S.A. 54:4-63.26 provides:
Whenever any real property is by law exempt from taxation and the right to such exemption ceases by reason of a change in use or ownership of such property, the same shall be assessable as omitted property as hereinafter provided. The county board of taxation shall, by resolution, cause such *613 assessment to be made and entered upon the tax duplicate as in other cases of omitted property. Any such assessment shall be entered in the list known as the "Added Assessment List, 19__" of the municipality wherein said property is located.
This statute is consistent with N.J.S.A. 54:4-63.12 which provides: "In any year or in the next succeeding year, the county board of taxation may, in accordance with the provisions of this act, assess any taxable property omitted from the assessment for the particular year." See also N.J.S.A. 54:4-63.31. It may be argued that property in tax exempt status on October 1 of the pretax year cannot be included in the assessment list for the coming tax year but it must be included as an omitted assessment to be taxed at all.
Assessing exempt property whose exemption is lost between October 1 and January 1 under the original omitted assessment procedure of N.J.S.A. 54:4-63.12 et seq. or under the alternate procedure of N.J.S.A. 54:4-63.31 et seq. has certain advantages, even though a proportionate tax for a portion of the pretax year is not sought. This procedure calls special attention to the asserted loss of tax exempt status. N.J.S.A. 54:4-63.13 provides for a hearing by the county board of taxation on notice to the taxpayer. The alternate method of making omitted assessments calls for special notice to the taxpayer. N.J.S.A. 54:4-63.35. This procedure would comply with the literal provisions of N.J.S.A. 54:4-35 and N.J.S.A. 54:4-63.26. The procedure also allows additional time in which to file tax appeals pursuant to N.J.S.A. 54:4-63.23 or N.J.S.A. 54:4-63.39 depending upon the omitted assessment procedure used. On the other hand it seems incongruous to use the omitted assessment procedure for property subject to taxation for a full year, because taxes for omitted assessments are not due until late in the year. N.J.S.A. 54:4-63.20; N.J.S.A. 54:4-63.37.
We hold that property whose exempt status has been lost prior to October 1 of the pretax year can be put on the regular tax rolls as of January 1 of the following year without utilizing the omitted assessment procedure. The omitted assessment procedure must be used to levy a proportionate tax *614 for less than a full year. If the tax exempt status is lost between October 1 and December 31 of the pretax year, the omitted assessment procedure must also be used.
In the Tax Court, plaintiffs did not assert the need to use the omitted assessment procedure, and the issue was not considered. We raised the issue on this appeal and it was briefed by the parties. The City asserts that the property had lost its tax exempt status as of October 1 of the pretax year. However, there is no evidence in the record before us to show when the alleged loss of tax exempt status occurred and what change in use caused that change in status.
Thus, while agreeing with Judge Crabtree's decision on the issues presented below, we find it necessary to remand the case to the Tax Court to determine when the change in use and loss of tax exempt status occurred, if at all, and to reconsider the case in the light of this opinion.
We remand the case to the Tax Court for further proceedings consistent with this opinion after which the judgment previously entered may be ratified, modified or vacated as required. We do not retain jurisdiction.
NOTES
[1] The complaint also asserted separate tax appeals as to the year 1983. In that respect the complaint was dismissed without prejudice to the right to file separate appeals for that tax year. No issue is presented in this court as to the assessments for 1983.
[2] Both plaintiffs are non-profit religious organizations. They alleged that on St. Michael's property of 4.988 acres are a consecrated monastic church, an outdoor shrine and an outdoor recreational area. They alleged that on St. Paul's 4.996 acres are a monastery and several support buildings, a cemetery, shrines and areas used for recreational and religious purposes.
[3] The extension applied to other Hudson County municipalities as well. We are told that the tax lists and duplicates were not certified by the Hudson County Board of Taxation until June 7, 1982.