289 N.J. Super. 138 (1995)
673 A.2d 279
IN RE APPEAL OF TOWNSHIP OF MONROE FROM DETERMINATION OF LOCAL FINANCE BOARD.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 1995.
Decided December 19, 1995.
*142 Before Judges PETRELLA, SKILLMAN[1] and P.G. LEVY.
Joel L. Shain argued the cause for appellant Township of Monroe (Shain, Schaffer & Rafanello, attorneys; Mr. Shain, on the briefs; Joyce Wilkins-Pollison, also on the brief; F. Clifford Gibbons, on the reply brief).
Daniel P. Reynolds, Deputy Attorney General, argued the cause for respondent Local Finance Board (Deborah T. Poritz, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Mr. Reynolds, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
*143 The Township of Monroe appeals from the decision of the Local Finance Board, Division of Local Finance in the Department of Community Affairs (Board), upholding an August 23, 1994 joint letter order of the Director of the Division of Local Government Services and the Assistant Director of the Division of Taxation. The order directed Monroe Township "to take no action to issue checks or other credits to property owners affected by" Monroe Township's July 6, 1994 tax abatement resolution. That resolution provided certain homeowners in Monroe Township with a partial abatement on their 1994 real estate taxes.[2] The resolution purportedly was adopted by Monroe Township pursuant to the authority in N.J.S.A. 54:4-99 and 100.
The owners of certain types of condominium units in a planned retirement community located in Monroe Township had objected to their 1994 property tax assessments as discriminatory. They informed Monroe Township that prior to April 1, 1994, their representatives had discussed their concerns with Monroe Township's tax assessor, who assertedly had assured them that their property tax assessments for 1994 would be reduced. Apparently relying on that assurance, the property owners did not file tax appeals for 1994. Monroe Township's tax assessor denied that she had made such an assurance.
Monroe Township responded to the taxpayers' pleas by adopting a July 6, 1994 resolution approving a property tax abatement program[3] for those taxpayers under N.J.S.A. 54:4-99 and 100. The resolution recited in part:

*144 WHEREAS, the Assessor, although denying she agreed to reduce the assessments of the Lexington and Laurel units for the tax year 1994, recognizes that if she had reconsidered the full and fair value of the Lexington and Laurel units prior to the April 1st filing deadline she would have reduced the 1994 assessments as reflected on exhibit A attached hereto and made a part hereof....
In the joint letter order from the Division of Local Government Services and the Division of Taxation, the State took the position that N.J.S.A. 54:4-99 and 100 only applied in instances where there were illegal assessments or where "past due taxes" were due and owing and that neither situation existed here. Accordingly, the abatements were ordered to be withheld.
Monroe Township then appealed the joint order to the Board. In reaching its decision to uphold the order, the Board relied on its statutory authority to supervise and regulate the financial activities of local governments. It concluded that the Director's order was proper because Monroe Township had circumvented the statutory procedures for challenging property tax assessments by unlawfully using the cited statutory sections.
Monroe Township argues that the Board lacked jurisdiction over local government tax abatement matters. It also argues that it had authority under N.J.S.A. 54:4-99 and 100 to adopt the tax abatement resolution because the assessor's failure to reduce the 1994 assessments rendered them "illegal," and therefore, it was refunding "past due," "illegal" taxes.

I.
When an agency interprets a statute, the appellate court is in no way bound by the agency's interpretation. Greenwood v. State Police Training Ctr., 127 N.J. 500, 513, 606 A.2d 336 (1992). Monroe Township, through its own action, attempted to cure what it considered an improper act of the tax assessor, and in so doing, Monroe Township effectively circumvented the tax appeal process and overstepped its statutory authority. Hence, the Board acted *145 within its statutory authority and responsibility to supervise and regulate the financial affairs of local governments when it affirmed the joint order directing Monroe Township not to execute the resolution. See N.J.S.A. 52:27BB-6, -8 and -10.
Monroe Township's actions effectively circumvented the tax appeal process. The usual chain of authority and appeal from the tax assessor's action is not through the local governing body, but rather through the county tax board, the state Division of Taxation, and through the court system, starting with the Tax Court.[4]See West Milford Tp. v. Van Decker, 235 N.J. Super. 1, 7, 561 A.2d 607 (App.Div. 1989), aff'd, 120 N.J. 354, 576 A.2d 881 (1990); Arace v. Irvington, 75 N.J. Super. 258, 268, 183 A.2d 104 (Law Div. 1962); see also Jeffers v. City of Jersey City, 8 N.J. Tax 313 (Law Div. 1986), aff'd, 214 N.J. Super. 584, 520 A.2d 797 (App.Div. 1987).
Even if the governing body in this case attempted to do what it perceived to have been equity, it cannot reduce taxes for certain taxpayers on an ad hoc basis through the application of the abatement procedures in N.J.S.A. 54:4-99 and 100. The assessment procedure and the appeal mechanism clearly is defined under the statute. The governing body has no direct role in that procedure, except in certain cases to approve a settlement of a tax appeal. Monroe Township's reliance on concepts of tax abatement cannot be used to subvert the normal tax assessment appeals. The improper nature of the abatements is particularly clear when it is considered that the individual amounts of the abatements for each unit were fixed on projected reduced assessment values.
N.J.S.A. 54:3-21 provides the process by which appeals of tax assessments are to be taken. That section also provides a filing deadline, and any extensions thereof are very limited. N.J.S.A. 54:3-21, 54:3-21.4, 54:3-21.5; Lawrenceville Garden Apt. v. Lawrence Tp., 14 N.J. Tax 285 (App.Div. 1994). Filing deadlines *146 for tax appeals have been strictly construed. See Lawrenceville, supra; St. Michael's Passionist Monastery v. Union City, 5 N.J. Tax 415 (Tax 1983), remanded on other grounds, 195 N.J. Super. 608, 481 A.2d 304 (App.Div. 1984). Meeting the statutory filing requirements is considered an "unqualified jurisdictional imperative...." St. Michael's Passionist Monastery v. Union City, supra, 5 N.J. Tax at 418 (citations omitted). Failure to meet these filing deadlines is a "fatal jurisdictional defect." Ibid.
Under N.J.S.A. 54:4-64, "every taxpayer is put on notice to ascertain from the proper official of the taxing district the amount which may be due for taxes or assessments against him or his property." Although the property owners in this case allegedly were "assured" by the assessor that their taxes would be reduced, they did not follow-up or determine whether such a reduction had been made prior to the filing deadline for tax appeals. The property owners are charged with an affirmative duty by the cited statute to seek out their tax assessments. See St. Michael's Passionist Monastery v. Union City, supra, 5 N.J. Tax at 418-419. Their failure to do so by the filing deadline must be considered a result of their own inaction. Missing the filing date under these circumstances would not justify extending the deadline under N.J.S.A. 54:3-21, 54:3-21.4, and 54:3-21.5. Hence, Monroe Township's abatement resolution, effectively providing certain property owners with relief when the ordinary statutory appeals method would not have done so because it was not timely used, circumvents the statutory scheme for obtaining tax relief and the Legislature's intent to have appeals governed under the specified procedure.
Even assuming that the tax assessor undertook to reduce the assessments of certain taxpayers, a disputed fact, the taxpayers are not relieved of their obligation to make sure that appropriate action was taken or that an order for a corrective assessment was issued by the assessor and filed with the county tax board. Nor did it relieve the condominium owners from filing a timely *147 appeal if the assessor had not taken any action.[5]See St. Michael's Passionist Monastery v. Union City, supra, 5 N.J. Tax at 418-419.
If it were shown that the taxpayer had legal justification for relying on statements made by the assessor, then failing to meet a statutory filing deadline might not be an absolute bar. Id. at 418. In essence, such a taxpayer would be arguing that the local governing body would be "estopped, on equitable grounds, from asserting a jurisdictional bar" to the right to have assessments reviewed by the court. Ibid. The doctrine of estoppel, however, is not readily employed, particularly in matters of taxation, where the public interest is affected so vitally. To successfully employ estoppel against a taxing authority "the circumstances must be extreme." Ibid. However, a "taxing authority is not bound or estopped by the unauthorized acts of its officers." Id. at 419 (citing Bayonne v. Murphy & Perrett Co., 7 N.J. 298, 81 A.2d 485 (1951); Airwork Serv. Div. v. Taxation Div. Director, 2 N.J. Tax 329 (Tax 1981), aff'd, 4 N.J. Tax 532 (App.Div. 1982), aff'd, 97 N.J. 290, 478 A.2d 729 (1984), cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985)).
The property owners affected by Monroe Township's resolution in this case had convinced the governing body that they failed to meet the deadline because they justly relied upon the assessor's alleged "assurance" that their assessments would be adjusted. Reliance under such a situation does not meet the requirements for allowing a late filing under the doctrine of estoppel. See St. Michael's Passionist Monastery v. Union City, supra. The result is that Monroe Township's resolution essentially allows the property owners to do that which the tax statutes *148 would not allow. Accordingly, Monroe Township's actions are not authorized by the statute.

II.
Monroe Township acted outside its statutory authority when it adopted the resolution pursuant to Sections 99 and 100. Those sections specifically allow Monroe Township to abate "illegal," "past due" taxes in the "best interests of the municipality...." N.J.S.A. 54:4-99 and 100. Even though such a power exists, it is limited and confined to narrow circumstances. See Jack Nissim & Sons v. Bordentown Tp., 10 N.J. Tax 464, 472 (Tax 1989) (quoting Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162, 110 A.2d 110 (1954)). Nonetheless, Sections 99 and 100 do not authorize Monroe Township to use the authority contained therein to circumvent the statutory appeal process that must be used by taxpayers when challenging their tax assessments. Such action by Monroe Township would not be in the "best interest of the municipality."
There are additional reasons why Monroe Township's resolution was outside the authority of Sections 99 and 100. Even if Monroe Township had the authority under Sections 99 and 100 to grant tax abatements to property owners who would otherwise be statutorily barred from challenging their tax assessments, Monroe Township's resolution only would be upheld if the taxes were determined to be "illegal" and "past due" under the abatement statutes. The statute does not specifically define "illegal" or "past due" taxes. The statute does state that the taxes may be "illegal in whole, or in part...." N.J.S.A. 54:4-100. Nonetheless, when such words are undefined in the statute, they are given their plain and ordinary meaning. Great Atlantic v. Point Pleasant, 137 N.J. 136, 143, 644 A.2d 598 (1994); Levin v. Township of Parsippany-Troy Hills, 82 N.J. 174, 182, 411 A.2d 704 (1980); American Delta v. R.K. Electronic, 276 N.J. Super. 283, 287, 647 A.2d 1344 (App.Div. 1994); Herrera v. Township of S. Orange, 270 *149 N.J. Super. 417, 420, 637 A.2d 526 (App.Div. 1993), certif. denied, 136 N.J. 28, 641 A.2d 1039 (1994).
The term "illegal" is defined as "contrary to or violating a law or rule or regulation or something else (as an established custom) having the force of law," Webster's Third New International Dictionary Unabridged (1971), or as "[a]gainst or not authorized by law." Black's Law Dictionary (6th ed. 1990). The parties do not dispute that the term "illegal" means "not authorized by law," and we agree that this is an appropriate definition of "illegal." However, the taxes here were legally imposed. If the assessments were deemed discriminatory or too high or low, they would be subject to modification. A tax that is discriminatory is not "illegal" within the purview of the abatement statute, although it is subject to challenge. Further, if the assessor followed the statutory procedures, the assessment is not deemed illegal merely because for one reason or another it is too high or low. Hence, the taxes in this case were not "illegal" under the statute.
Moreover, automatically characterizing a tax assessor's error as "illegal" simply because there is a claim that the assessment is discriminatory or wrong would mean that in every case where an appeal is based on a claimed discriminatory assessment, the governing body might be able to use the alternative means of redress for a taxpayer aggrieved by his assessment. The tax statutes and the caselaw do not contemplate this alternative appeal method.
The term "past due" taxes also is not defined in the statute. Monroe Township asserts that "taxes become `past due' immediately after they are due." We conclude that the term more appropriately equates with the definition of "delinquent"[6] taxes *150 under N.J.S.A. 54:4-66. The term "delinquent" in the statute refers to taxes that are unpaid. See N.J.S.A. 54:4-104 (collecting taxes that are in arrears); 54:4-122.7 (listing delinquent accounts); 54:4-134 (applying for property tax refunds against delinquent accounts). The record here does not reflect that the affected property owners were delinquent as to the property tax payments due February 1, and May 1, 1994. That the taxes for the first two quarters of 1994 apparently had been paid prior to Monroe Township's July 6, 1994 resolution precludes them from being considered "past due." Moreover, the property taxes due on August 1, and November 1, 1994, were not even due at the time Monroe Township adopted the July 6 resolution. Therefore, the taxes abated by Monroe Township's resolution were not "past due," as required by the statute.
Our research discloses only three reported cases that have dealt with the use of N.J.S.A. 54:4-99 and 100. They are Aichele v. Borough of Oaklyn, 1 N.J. Super. 621, 64 A.2d 924 (Law Div. 1948); In re Wellhofer, 137 N.J.L. 165, 59 A.2d 393 (Sup.Ct.), cert. denied, 137 N.J.L. 342, 60 A.2d 247 (Sup.Ct. 1948), aff'd, 18 N.J. Super. 197, 87 A.2d 43 (App.Div. 1952);[7] and Murphy v. Town of W.N.Y., 132 N.J.L. 111, 39 A.2d 38 (Sup.Ct. 1944).
In the earliest of these cases, Murphy v. West New York, supra, 132 N.J.L. 111, 39 A.2d 38, the Court set aside the Town's resolution, adopted pursuant to R.S. 54:4-99 and -100. Id. at 112, 115, 39 A.2d 38. The Court initially stated that unless the Town followed the criteria set forth in Section 100, the tax abatement would be considered a gift of municipal funds, contrary to the State's pre-1947 constitution. Id. at 114, 39 A.2d 38. The Town's resolution abating the property owner's taxes was considered *151 improper because the market value of the property on which the taxes were assessed was greater than the taxes (almost double), and this was improper under the statute. Ibid.
This concept was reiterated in In re Wellhofer, supra, 137 N.J.L. 165, 59 A.2d 393, where the Court authorized a summary investigation under R.S. 40:6-1 of Atlantic City's actions in allegedly giving preferential treatment to particular groups. 137 N.J.L. at 165-171, 59 A.2d 393. In so holding, the Court reviewed R.S. 54:4-99 and -100 and indicated that an abatement could be made only where "the market value of the property in question upon or against which such taxes, assessments or other charges have been levied, is less than such principal sum...." Id. at 169, 59 A.2d 393. The Court also commented that such authority was to be used to abate "uncollectible" taxes. Id. at 168-171, 59 A.2d 393.
These cases suggest that the abatement power of the municipality was to be used to unencumber land where the owner was unable to pay the taxes on the land and where the taxes were greater than the value of the land. Such clearly is not the context in which the resolution under review was adopted.
In the last of the referenced cases, Aichele v. Borough of Oaklyn, supra, 1 N.J. Super. 621, 64 A.2d 924, Judge Proctor (later Justice) discussed the definition of the term "assessment," as found in Sections 99 and 100. He stated that the term assessment "clearly means municipal charges and not the value of land subject to taxation." Id. at 626, 64 A.2d 924. Thus, to use the abatement authority to adjust the value of the property is to intrude upon the Legislature's determination to place the land assessment valuation into the hands of the tax assessor. The assessor's action must be reviewed through the statutorily prescribed method. Therefore, adopting a resolution that does not pertain to "municipal charges," but nonetheless effectively adjusts the tax assessor's valuation of the property, circumvents the Legislature's specifically prescribed tax valuation method. Judge Proctor observed that he knew "of no law which authorizes a borough council to substitute itself for *152 those who in law are charged with the duty of assessing the value of property for taxes." Ibid.
In summary, the resolution adopted by Monroe Township was not authorized by Sections 99 and 100 and does not fit any of the exceptions mentioned in Wellhofer, Murphy, or Aichele. The abatement adopted by Monroe Township effectively circumvented the tax appeal process. The Director of the Division of Local Government Services and the Assistant Director of the Division of Taxation properly acted within their supervisory power when they jointly issued an order negating the Township's resolution.
Affirmed.
NOTES
[1] Judge Skillman did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] We are advised by Monroe Township's attorney that the aggregate dollar amount of the rebate was $74,824.40 and that 329 homeowners were to receive abatements. This would result in an average abatement of $227.43 per homeowner. The affected homeowners are not parties to this appeal.
[3] The abatements apparently were based on the reduced assessment amounts contained in exhibit A to Monroe Township's resolution. The resultant tax differential from the actual assessment for each unit was proposed to be the amount of each individual tax rebate.
[4] In certain instances a tax appeal may bypass the county tax board. See N.J.S.A. 54:3-21.
[5] The cost of filing a tax appeal with the County Board of Taxation is minimal as compared to the value of the condominium units involved here, which were generally valued at under $250,000. The fee is based on the amount for which the property is assessed. For example: up to $150,000, a $5 fee; and, from $150,000 to $500,000, a $25 fee. N.J.S.A. 54:3-21.3. Even if the affected taxpayers thought the tax assessor intended to adjust their assessments, they nonetheless could have filed a protective appeal.
[6] Webster's defines "delinquent" as "in arrears in payment of debt or interest thereon ... past due and unpaid...." Webster's Third New International Dictionary Unabridged (1971). Webster's defines "past due" as "overdue." Id. "Overdue" is defined as "unpaid after the proper or assigned time of payment." Id.
[7] The unusual history of this case was a result of the changes in the court system resulting from adoption of our 1947 Constitution (see Articles VI and XI thereof).