LARIO, J.T.C.
This is a complaint filed by Red Bank Borough under the provisions of N.J.S.A. 54:51A-7 commonly referred to as the correction of errors statute. The issue raised on each of the errors alleged is whether each constitutes an “error” as contemplated by the statute which provides in pertinent part:
The tax court may, upon the filing of a complaint at any time during the tax year or within the next 3 tax years thereafter, by a property owner, a municipality or a county board of taxation, enter judgment to correct typographical errors, errors in transposing, and mistakes in tax assessments____ *154 The tax court shall not consider under this section any complaint relating to matters of valuation involving an assessor’s opinion or judgment. [Ibid.]
The assessment sought to be corrected is for the tax year 1984 upon premises owned by New Jersey Bell Telephone Company, identified on the tax map as Block 105, Lots 19 and 20, entered as follows:
Land: $ 194,900[1]
Improvements: $1,127,300
Total: $1,322,200
The borough’s complaint, which was not filed with this court until June 18,1985, alleges that this “assessment is incorrect as the. result of a typographical error, error in transposing or other mistake, not an error relating to matters of valuation, involving an assessor’s opinion of judgment[;]” and that the correct assessment should be:
Land: $ 350,400
Improvements: $2,038,300
Total: $2,388,700
Defendant filed an answer asserting that the alleged errors and mistakes are not cognizable as correction of errors under N.J.S.A. 54:51A-7, and, in the alternative, if the errors are correctable under the statute, the revised assessment sought is not correct.
Subsequent to issues being joined, the parties filed stipulations of settlement, requesting the entry of a Tax Court judgment as follows:
*155 Land: $ 350,400
Improvements: $1,249,600
Total: $1,600,000
A hearing was scheduled for the purpose of taking proofs to establish the exact facts relating to the errors and to ascertain whether there was an error correctable under this statute, and, if so, the correct assessment to be applied.
The tax assessor testified that the borough put into effect for the tax year 1984 a district-wide 100% revaluation whereby the subject property was assessed as hereinabove set forth. In approximately June 1984, when the tax duplicates were promulgated, it came to the borough’s attention that as a result of the subject property’s reassessment, defendant was entitled to a tax refund which caused it to request the revaluation firm to re-examine defendant’s assessment. At its re-examination it was concluded that errors had been made; however, this decision was not reached until after August 15, 1984 which was beyond the time limitation for appeals to the county board of taxation under N.J.S.A. 54:3-21.
The vice-president of the revaluation firm testified that the subject property was revalued by an employee under his control and supervision who was no longer employed by the firm. After the tax result of the revalued assessment of the subject property was called to his attention, he directed a re-examination of the property which was conducted by the original employee and a new property card was prepared.
The original property record card discloses that the subject property consists of three tracts of land. The first is 60 feet wide by 361 feet deep; the second, 60 feet wide by 287 feet deep; and, the third, a rear lot, 60 feet wide by 114 feet deep.
Each lot was given a front-foot unit value of $2,000. The first tract was given a depth factor of 1.44 to arrive at a value of $172,827. The second tract was given a depth factor of 1.39 minus a depreciation of 50% which was recorded on the property record card as having a value of $16,722. The third tract *156 was given a depth factor of .09 minus a depreciation of 50% which resulted in a value of $5,400.
The assessment levied for tract one is not in dispute. Although the amended record card placed in evidence eliminated the 50% depreciation on lot three to arrive at an amended value of $10,800 instead of $5,400, no evidence was presented concerning this lot. It is claimed that tract two was incorrectly computed in that 60 feet frontage times $2,000 multiplied by a depth factor of 1.39 equals $166,800, minus a 50% depreciation factor should have computed to a total of $83,499 instead of the $16,722 listed. The witness further stated that after reviewing the property, it was concluded that the 50% depreciation factor should not have been given; therefore, the correct land assessment for tract two should be $166,800.
He testified that the improvement assessment as originally calculated by the employee included two errors, the first being the classification of the building and the second the omission of an elevator. The building was initially listed under “Commercial Building Data” as a normal steel structure, classification 105, which he claimed to be a mistake in that it should have been classified as a specialty building, classification 135, thereby increasing its overall value. The revaluation executive further testified that the property contained a five-floor elevator whose value they had failed to include in the original appraisal. This additional value was added to the second record card by allocating an initial value of $58,500 and applying thereto a cost conversion factor of 1.62 to arrive at an updated cost value of $94,770 which was depreciated by 18% to arrive at an elevator net value of $77,700. Since the elevator serviced five floors, they added thereto a cost value of $1,900 for each floor and applied thereto the same conversion factor and depreciation percentage applied to the elevator which he testified resulted in an additional net value of $10,119.[2]
*157 According to the revised figures of the second property record card, the improvements value was increased from $1,127,300 to $2,038,300. The proposed settlement that had been submitted listed the “corrected” improvements at $1,249,-600. This discrepency was not explained.
Although the Appellate Division has determined that the correction or errors statute is to be liberally construed, Sabella v. Lacey Tp., 204 N.J. Super. 55, 497 A.2d 896 (App.Div.1985), the liberality is limited to typographical errors, errors in transposing and mistakes in tax assessments. N.J.S.A. 54:51A-7 specifically directs, in proceedings pursuant thereto, that complaints relating to matters of valuation involving an assessor’s opinion or judgment are not to be considered by this court. Bressler v. Maplewood Tp., 190 N.J. Super. 99, 461 A.2d 1218 (App.Div.1983). “We disagree with neither Manczak [Manczak v. Dover Tp., 2 N.J. Tax 529 (1981) ] nor Bressler to the extent they say that the correction of errors statute was not intended to remedy errors in judgment or opinion.” Sabella, supra, 204 N.J. Super. at 60, 497 A. 2d 896.
In Sabella the error was that the frontage of the property was 58.0 feet and not 580 feet. The error was the misplacement of a decimal point and no subjective judgment was involved. Here, the alleged errors were both mathematical and subjective.
 Initially, it is clear that the assessment for the second tract was incorrectly calculated. By applying a unit value of $2,000 a front foot (which value is not challenged by defendant) the correct result utilizing the depth factor and depreciation initially attributed thereto, should have been $83,400. This is a mathematical error not involving judgment or opinion; therefore, under this statute as interpreted by Sabella, supra, it is correctable. However, the depreciation percentages initially attributed to the land (tracts 2 and 3) were matters of the assessor’s judgment. Depreciation is defined as a loss of utility and hence a loss of value from any cause. Boyce, Real Estate Appraisal Terminology (1975) at 63. In the opinion of the *158 appraiser the two tracts of land sustained a loss of value (for whatever reason which does not appear) entitling each to a depreciation of 50%. Upon the municipality’s review of its assessment this opinion was contradicted. Since the allowance of depreciation and the amount thereof involves opinion, it may not be altered by a complaint under this statute.
The original classification of the building as a “normal steel structure” as opposed to the later determination of “speciality building” is also a matter of opinion. It certainly cannot be claimed that this constitutes a typographical error or error in transposing. If it is a mistake, it is one of judgment and a full factual hearing would be required to determine which conclusion is correct; it is not an obvious mistake that can be corrected by merely examining the original property record card and recalculating correct dimensions.
The alleged omission of the value of the elevator plus its five floor stops was not intended by the Legislature to be correctable by this statute. It is an item includable in the overall value of the building and is part of the final conclusion of value attributable to the total improvements — a subjective judgment. This remedial legislation is not to be utilized as a substitute for the orderly statutory appeal process provided by N.J.S.A. 54:3-21 to rectify an incorrect conclusion of total value. If a party were permitted to file a correction of errors complaint to remedy such a failure, the normal legislative appeal procedure would be extended for a period of four years which is contrary to the legislative purpose.
With the exception of the mathematical correction to the land value, the revaluation firm’s subsequent review was essentially a reappraisal of its original judgment of the property’s true value. When the assessor accepted and certified the revaluation firm’s final true value as a matter of law he adopted the opinion and judgment of the revaluation firm. The assessor cannot now attack that judgment by a correction of errors complaint.
*159 Judgment will be entered correcting the assessment as follows:
Land:
Tract One (no change): $172,827
Tract Two (corrected): 83,499
Tract Three (no change): 5,400
Total land: $ 261,726
Improvements: $1,127,300
Total: $1,389,026

 The complaint listed the original assessment as land — $194,000, improvements — $1,127,300 for a total of $1,322,200 and the assessor so testified; however, the original property record card placed in evidence lists the land assessment as $194,900 which when added to the improvements correctly totals $1,322,200.

 Using this witness' figures the court calculates the net value as $12,619.