651 A.2d 77

HOVBILT, INC., PLAINTIFF–APPELLANT, v. TOWNSHIP OF HOWELL, DEFENDANT–RESPONDENT.

Argued September 26, 1994—Decided December 22, 1994.

*John C. Caniglia* argued the cause for appellant.

*Ernest Bongiovanni* argued the cause for respondent.

The opinion of the Court was delivered by

STEIN, J.

This appeal requires that we consider the scope of the Correction of Errors statute, *N.J.S.A.* 54:51A–7. The specific error in issue arises from the misplacing by the Howell Township tax assessor's office of the farmland-assessment application filed by Hovbilt, Inc. (Hovbilt), resulting in a higher property tax

assessment than would have been imposed if the property had been assessed as farmland.

The Tax Court, in an unreported opinion, held that the error was not correctable under the statute. A divided panel of the Appellate Division affirmed. 263 *N.J.Super.* 567, 623 *A.*2d 770 (1993). Hovbilt appeals to this Court as of right. *See R.* 2:2–1(a)(2).

I

The essential facts are not in dispute. Since 1984, Hovbilt has been the owner of a thirty-five-acre parcel of land in the Township of Howell, known as Block 142, lots 16 and 24. Hovbilt purchased the property in anticipation of "potential development use," but in recent years the land has been farmed for soybeans.

From each of the tax years 1985 through 1990, Hovbilt submitted an application to the Township to have the property assessed as land in agricultural or horticultural use, pursuant to the Farmland Assessment Act of 1964, *N.J.S.A.* 54:4–23.1 to –23.23 (the Act). The Township granted the application each year.

For the 1991 tax year, Hovbilt prepared and timely filed on July 10, 1990, the application for farmland assessment, form FA–1, with the tax assessor's office in Howell Township. See *N.J.S.A.* 54:4–23.6(c); *N.J.A.C.* 18–15–2.4. However, the tax assessor did not see, and therefore did not consider, the application. The form apparently was misplaced or mishandled. In June or July 1991, Hovbilt received its 1991 tax bill. The property was assessed at full value, in the amount of $556,300. The assessment resulted in annual taxes of $9,368. When the property had been assessed as farmland in 1990, the assessment was $16,100, and annual taxes were $695.04.

Hovbilt did not appeal its assessment to the Monmouth County Board of Taxation. See *N.J.S.A.* 54:3–21. On December 11, 1991, Hovbilt filed a complaint with the Tax Court, alleging a correctable error under the Correction of Errors statute, *N.J.S.A.*

54:51A–7. That statute provides in part that the Tax Court may "upon the filing of a complaint at any time during the tax year or within the next 3 tax years thereafter, ... enter judgment to correct typographical errors, errors in transposing, and mistakes in tax assessments."

The Tax Court dismissed the complaint, noting that the case law interpreting the Correction of Errors statute has construed the statute restrictively. The court held that the error complained of was not a typographical error, an error in transposing, or a mistake in tax assessment, and therefore could not be corrected pursuant to the statute.

In affirming, the Appellate Division majority reviewed the history of the Correction of Errors statute, describing the statute as "contrary to the other provisions of Title 54 regarding tax matters which require strict adherence to time limitations." 263 *N.J.Super.* at 570, 623 *A.*2d 770. Perceiving the statute as an exception to the regular tax-appeal process, the majority was "convinced that the Statute must be strictly construed." *Ibid.* The majority noted the "more than two million assessments each year, suggest[ing] to us the system will collapse unless a strict interpretation is accorded exceptions to the general tax appeal scheme." *Id.* at 571, 623 *A.*2d 770. The majority considered whether the failure of the tax assessor to consider the application for farmland exemption was a "mistake[ ] in tax assessment[ ]" as described in the Correction of Errors statute. The court applied the principle of *ejusdem generis* to limit "mistakes in tax assessments" to "embrace[ ] *only* mistakes that are similar to typographical errors and errors in transposing." *Ibid.* The majority held that the failure to consider the application was not similar to "typographical errors or errors in transposing, which are mechanical in nature." *Ibid.*

The dissenting member rejected the majority's concern over a "cascade of cases" that would overwhelm the courts. *Id.* at 573, 623 *A.*2d 770. The dissent concluded that the interpretation

offered by the majority serves to strike any meaning from the phrase "mistakes in tax assessments." *Id.* at 574, 623 *A.*2d 770.

## II

A taxpayer or a taxing district aggrieved or discriminated against because of the assessed valuation of property may file a petition of appeal with the county board of taxation (county board). *N.J.S.A.* 54:3–21. The county board can compel the attendance of witnesses and the production of books and papers, and can examine witnesses under oath. *N.J.S.A.* 54:3–22(a). If satisfied by the proofs that the assessment was incorrect, the county board can revise the taxable value of the property. See *N.J.S.A.* 54:3–22(c)-(e) (providing methods of computation of taxable value of property). Any determination by the county board may be reviewed by the Tax Court. *See N.J.S.A.* 54:48–1 to 54:53–16; *N.J.S.A.* 54:3–26a.

"The right to appeal a real property assessment is statutory, and the appellant is required to comply with all applicable statutory requirements." *F.M.C. Stores Co. v. Borough of Morris Plains,* 195 *N.J.Super.* 373, 381, 479 *A.*2d 435 (App.Div. 1984), *aff'd,* 100 *N.J.* 418, 495 *A.*2d 1313 (1985). The petition of appeal must be filed with the county board before April 1 of the tax year at issue. *N.J.S.A.* 54:3–21. (*L.*1991, *c.* 75, changed the date for filing petitions of appeal from August 15 to April 1, effective January 1, 1992.) Failure to file a timely appeal of a tax assessment is a fatal jurisdictional defect. *F.M.C. Stores Co., supra,* 195 *N.J.Super.* at 382–83, 479 *A.*2d 435. "Tax laws generally require that tax determinations be subject to review in a mandatory manner in strict conformity with statutory time limitations." *Little Egg Harbor Township v. American Tel. & Tel. Co.,* 9 *N.J.Tax* 314, 323 (Tax 1987), *aff'd o.b.,* 10 *N.J.Tax* 236 (App.Div. 1988). Without timely filing of the review petition, a county board, *Danis v. Middlesex County Bd. of Taxation,* 113 *N.J.Super.* 6, 10, 272 *A.*2d 542 (App.Div.1971), or the Tax Court, *Exxon Corp. v. East Brunswick Township,* 5 *N.J.Tax* 216, 222–23 (Tax

1982), *aff'd in part and rev'd in part on other grounds*, 192 *N.J.Super.* 329, 470 *A*.2d 5 (1983), *certif. denied*, 96 *N.J.* 312, 475 *A*.2d 601 (1984), is without jurisdiction to grant the relief sought. *See also H.G.K.W. Corp. v. East Brunswick Township*, 8 *N.J.Tax* 454, 464 (Tax 1986) ("[P]laintiff's uncontroverted failure to file a petition of appeal with the county board within the statutory limitation period pursuant to *N.J.S.A.* 54:3–21 also forecloses plaintiff's right of appeal to the Tax Court."), *aff'd o.b.*, 9 *N.J.Tax* 91 (App.Div.1987).

■ The Correction of Errors statute is an exception to the standard tax-appeal process authorized by *N.J.S.A.* 54:3–21. The statute provides an extended period of relief after the deadline for appeal to the county board or to the Tax Court has passed. "The correction of certain types of assessor's errors requires a longer statute of limitations." *Van Winkle v. Borough of Rutherford*, 12 *N.J.Tax* 290, 293 (Tax 1992).

The Legislature first enacted the Correction of Errors statute in 1905. Section 5 of Chapter 67, *P.L.*1905, allowed the State Board of Tax Appeals to correct errors at any time. The only requirement was consent of the mayor or assessor of the municipality affected. *L.*1905, *c.* 67. In 1946, the Legislature amended the statute, *L.*1946, *c.* 161, requiring that verifiable facts be set forth in the application to support the correction, but permitting the error to be corrected only if the majority of the governing body of the affected municipality gave its consent.

The Legislature amended the statute again in 1979. *L.*1979, *c.* 44, § 1; *L.*1979, *c.* 114, § 8. Those amendments incorporated a number of substantive requirements that remain in effect. The aggrieved party could no longer seek relief at any time, and the taxpayer had to file an application for relief during the tax year or within the ensuing three years. Consent was no longer required to authorize correction of an error. The statute also extended the right of appeal to municipalities and county boards, and conferred jurisdiction in the Tax Court with respect to suits instituted under the statute. *L.*1979, *c.* 114, § 8. The statute was more specific

about the type of errors that could be corrected, limiting the statutory relief only to "typographical errors, errors in transposing, and mistakes in tax assessments." *L.*1979, *c.* 44, § 1. Taxpayers could not challenge valuations that involved the opinion or judgment of the assessor. *See L.*1979, *c.* 114, § 8; *see also* State Revenue, Finance and Appropriations Committee, *Statement to Senate Bill No. 1103*, at 1–2 (Sept. 18, 1978) (listing "several substantive changes made in [the correction-of-errors] procedure").

The legislative history indicates that the 1979 amendments were intended to limit the application of the Correction of Errors statute:

> The changes in the process provided in this bill represent a more *carefully defined and limited procedure* consistent with the intent of the Legislature in originally establishing the process in law. The process was established to permit a timely correction of administrative errors, avoiding the need for a formal appeal to be processed. It is not intended that this process be used for settlement of challenges of an assessors [sic] opinion as to value of a parcel of real property or the assessment of property as real property.
>
> [Senate Revenue, Finance and Appropriations Committee, *Statement to Senate Bill No. 1103*, at 2 (Sept. 18, 1978) (emphasis added).]

■ The Correction of Errors statute currently .reads:

> The tax court may, upon the filing of a complaint at any time during the tax year or within the next 3 tax years thereafter, by a property owner, a municipality or a county board of taxation, enter judgment to correct typographical errors, errors in transposing, and mistakes in tax assessments, provided that such complaint shall set forth the facts causing and constituting the error or errors and mistake or mistakes, or either thereof sought to be corrected and that such facts be verified by affidavits submitted by the plaintiff. The tax court shall not consider under this section any complaint relating to matters of valuation involving an assessor's opinion or judgment. Any complaint so submitted shall contain a certification that a copy of the complaint and all exhibits thereto have been filed with the county board, and served upon the property owner or the municipality, or both, as may be appropriate in the case of each plaintiff. Any party required to receive a copy of the complaint pursuant to this section may file an answer to the complaint with the tax court pursuant to rules of court. The tax court may require further proof and grant or deny the complaint as it may deem necessary or proper.
>
> [*N.J.S.A.* 54:51A–7.]

Most of the cases that have considered the Correction of Errors statute have construed it restrictively. In defining the "types of

assessor's errors requir[ing] a longer statute of limitations," courts have sharply limited the meaning of the phrase "mistakes in tax assessments." *Van Winkle, supra,* 12 *N.J.Tax* at 293.

Our inquiry concerning the proper interpretation of the Correction of Errors statute gains perspective from a detailed examination of the cases that have considered various applications of the statute. The first case that considered the current formulation of the statute was *Manczak v. Township of Dover,* 2 *N.J.Tax* 529 (Tax 1981). In *Manczak,* the assessor, over a period of years, valued a residence based on the incorrect assumption that the dwelling contained a basement. The taxpayers never appealed from any of the erroneous assessments. They filed a complaint seeking relief under the statute, and the attorney for the municipality provided the court with a proposed order for correction by consent. The Tax Court denied relief, holding that the use of incorrect data by the assessor cannot be remedied pursuant to the Correction of Errors statute. The court noted that the alleged mistake involved the opinion or judgment of the assessor. *Id.* at 535. Because the *Correction of Errors* statute was a "deviation from this appeal procedure [*N.J.S.A.* 54:3–21], which is the method established by the Legislature for reviewing assessments, [it was] analogous to an exemption and must be strictly construed." *Id.* at 534. Applying the *ejusdem generis* rule of statutory construction that limits the meaning of general statutory words to include only those objects enumerated by preceding specific words, the Tax Court construed the phrase "mistakes in tax assessments" to refer only to "mistakes like typographical errors and errors in transposing." *Id.* at 535.

*Township of Springfield v. Garner,* 3 *N.J.Tax* 92 (Tax 1981), is significant in that a municipality sought to invoke the Correction of Errors statute to increase an assessment. Garner had obtained a building permit for the construction of an office building. The Township made partial assessments during the period of construction. Although the building was completed in June 1975, the Township neglected, both for 1975 and 1976, to render an added

assessment that reflected the value of the completed structure. Nor did the Township seek an increase in the assessment by filing a petition with the county board, pursuant to *N.J.S.A.* 54:3–21. The Township instead brought an action to increase the assessment pursuant to the Correction of Errors statute. The Tax Court held that the statute did not provide relief, stating that the statute was limited to those "matters expressly delineated therein, *i.e.,* typographical errors, errors in transposition and mistakes in assessment." *Id.* at 96. The court also relied on the principle of *ejusdem generis* to define "mistakes in tax assessments" as "mistakes in the nature of typographical or transpositional errors." *Ibid.*

In *Bressler v. Township of Maplewood,* 190 *N.J.Super.* 99, 461 *A.*2d 1218 (App.Div.1983), the plaintiff was the owner of an "L–shaped single lot, 200 feet wide with an irregular depth of about 250 feet for 105 feet and 200 feet for the remaining 95 feet with a dwelling house and an accessory building." *Id.* at 100, 461 *A.*2d 1218. In determining the value of the land for the years 1976 through 1979, the assessor miscalculated by failing to discount the property's frontage to reflect its irregular depth. As a result, the property was assessed at $34,300 rather than $21,500. The parties agreed that the assessment was erroneous, and the Township corrected the assessment in 1980. *Ibid.* The Appellate Division affirmed the Tax Court's denial of relief under the statute. The court noted that the mistake alleged involved the opinion or the judgment of the assessor, and did not constitute a typographical or transpositional error. *Id.* at 101, 461 *A.*2d 1218. The court held that to permit the correction of an assessment based on incorrect information would "permit bypassing the normal appeal procedure and extend the appeal deadline contrary to legislative purpose." *Ibid.*

The Tax Court also held the statute inapplicable in *Flint v. Lawrence Township,* 6 *N.J.Tax* 97 (1983), although the parties had agreed that the property had been assessed based on an erroneous assumption concerning its size. The plaintiff alleged that for

the years 1979, 1980, and 1981, the assessments had been based on a lot size of 6.866 acres, whereas the property actually consisted of 5.226 acres. *Id.* at 99. The Lawrence Township assessor agreed with the plaintiff's contention and consented to the form and entry of a proposed judgment that would require the Township to refund $2,785.65. The Tax Court denied relief, concluding that the Correction of Errors statute did not apply, relying on *Manczak, supra.* After the Tax Court issued its opinion, the Appellate Division, in *Sabella v. Lacey Township,* 188 *N.J.Super.* 500, 457 *A.*2d 1220 (1983) (*Sabella* I), expressed "disagreement with *Manczak* to the extent it suggests strict construction of the correction of errors statute." *Id.* at 503, 457 *A.*2d 1220. On reconsideration in *Flint,* the Tax Court noted that "it is apparent that the decisions of the Appellate Division in *Sabella* and *Bressler* are in conflict," 6 *N.J.Tax* at 101, and held that "the more restrictive construction of [the Corrections of Errors statute] by the courts in *Bressler* and *Manczak* is consistent with the legislative scheme for the orderly resolution of tax assessment disputes and should be followed." *Id.* at 108. The court pointed to the large number of assessments each year as evidence of the "need to adhere to the regular review process established by the Legislature." *Id.* at 107. "In recognition of this potential problem the Legislature tightened the correction of errors statute with the adoption of *L.*1979, *c.* 44." *Ibid.* The Tax Court again refused to grant relief.

*McElwee v. Ocean City,* 7 *N.J.Tax* 355 (Tax 1985), involved an improper assessment of conventional residential property as if it were a condominium. The plaintiffs were owners of residential beach-front property. In 1983, they constructed a two-story detached residential building, with a separate apartment on each floor. In July 1983, they executed a "master deed," with the intention of establishing a condominium form of ownership of the property. Prior to the recording of the deed, the plaintiffs decided not to establish a condominium form of ownership and took no action to establish a condominium association, the entity to which the property was to be transferred. The plaintiffs learned that the deed was erroneously recorded on August 8, 1983, and

filed a corrective deed on August 10, 1983; the corrective deed was not recorded until January 26, 1984. The property was assessed as a condominium for four months of 1983 and for the tax year 1984. The plaintiffs sought relief under the Correction of Errors statute "due to inadvertent clerical errors in the recording of the master deed and the delayed recording of the revocation deed." *Id.* at 359. The Tax Court denied relief. The court held that because the "alleged mistake involves an assessor's opinion[,] this court is expressly prohibited from considering this complaint under this correction of error statute." *Id.* at 363. The court limited "mistakes in tax assessments" to "errors mathematical or technical in nature committed by the assessor or someone within the agency, employment or control of the taxing district." *Id.* at 362.

*L.S. Village, Inc. v. Lawrence Township*, 8 *N.J.Tax* 287 (Law Div.1985), *aff'd*, 8 *N.J.Tax* 327 (App.Div.1986), raised the question whether the Correction of Errors statute could be used to afford relief from an unconstitutional assessment of taxes. The plaintiff owned property that met all the statutory requirements of the Farmland Assessment Act for the tax years 1980 through 1982. The land was valued, assessed, and taxed as farmland for those years. In September 1981, the plaintiff secured preliminary subdivision approval from the Lawrence Township Planning Board. Because the subdivision approval affected the property's eligibility for farmland assessment, the Township's assessor sought approval from the Mercer County Board of Taxation for the imposition of rollback taxes for the years 1980 through 1982. The County Board approved the imposition of the rollback taxes. The plaintiff paid the rollback taxes, but one year later instituted suit to challenge the County Board's action, noting that the statute that had authorized the imposition of rollback taxes based on subdivision approval had been declared unconstitutional. *Id.* at 297–98. Treating the plaintiff's complaint as if it had sought relief under the Correction of Errors statute, the court denied relief. It observed that the statute provides for the correction of errors of an assessor, and stated that "[i]t is not at all clear that this

correction of errors statute can be utilized to correct an error made by a county board of taxation." *Id.* at 304. The court held that even if the Correction of Errors statute encompassed review of an error in assessment by a county board, the error in this case was related to matters of valuation involving opinion or judgment. The court further noted that "[t]he correction of errors statute must be strictly construed and limited to typographical, transpositional and ministerial errors and not errors involving opinion or judgment." *Id.* at 305.

In *American Dispenser Co. v. Borough of Carlstadt,* 8 *N.J.Tax* 70 (Tax 1985), the plaintiff sought relief from an error in the designation of its property during the years 1976 through 1983. The error resulted in the property being assessed as a 1.75 acre lot, whereas the property actually contained .96 acres. The taxpayer alleged that in 1977 the property had been improperly designated as Lot 33A–21, which was the adjoining lot on the 1930 tax map. That lot consisted of 1.752 acres. The error in the tax ledger continued until 1984, when the taxpayer discovered it and notified the assessor. The Tax Court held that the error was not correctable under the statute, noting that the "review of maps and information in the assessor's office resulted in a judgmental decision[,] not a typographical or transposition error." *Id.* at 78.

*H.G.K.W. Corp., supra,* 8 *N.J.Tax* 454, involved the question whether an assessor, acting under the assumption that a statute was unconstitutional, erred in failing to accord the plaintiff's property the exemption authorized by the statute. *N.J.S.A.* 54:4–23a provided that a newly-constructed structure intended for residential occupancy shall not be added to the assessment list as real property until a certificate of occupancy has been issued and the building is actually occupied. The building could not be omitted from the assessment list for a period greater than twenty-four months. In July 1984, the Law Division held that *N.J.S.A.* 54:4–23a was special legislation in violation of Article VIII of the New Jersey Constitution. *State League of Municipalities v. Kimmelman,* 197 *N.J.Super.* 89, 484 *A.*2d 59 (1984). In October

1984, the assessor, based on the prevailing rule of law, imposed improvement assessments on the plaintiff's five lots, four of which consisted of incomplete condominium units, the fifth consisting of an unfinished residential dwelling. Approximately one year after the date of the assessments, the Appellate Division held that *N.J.S.A.* 54:4–23a was constitutional. *State League of Municipalities v. Kimmelman,* 204 *N.J.Super.* 323, 498 *A.*2d 1266 (1985), *rev'd,* 105 *N.J.* 422, 522 *A.*2d 430 (1987). The plaintiff challenged the October 1984 assessment, claiming that the property met the criteria for a property-tax exemption for new construction pursuant to *N.J.S.A.* 54:4–23a, and sought relief under the Correction of Errors statute. The Tax Court granted summary judgment for the defendant, holding that no error existed because the assessor had acted in accordance with the status of the law at that time. *H.G.K.W. Corp., supra,* 8 *N.J.Tax* at 462–63. Moreover, the court held that the actions of the tax assessor were not mistakes in tax assessments. *Id.* at 460. "The language in the statute itself suggests limiting the phrase 'mistakes in tax assessments' to errors similar to typographical errors and errors in transposing, *i.e.,* clerical or administrative mistakes or errors." *Ibid.* (quoting *N.J.S.A.* 54:51A–7).

The property in *Neptune Corp. v. Township of Wall,* 9 *N.J.Tax* 80 (Tax 1987), was assessed from 1983 through 1985 "on the basis of a total area of 421.85 acres when in fact the property contained only 293.15 acres." *Id.* at 82. The assessor certified that the "acreage was determined from information on various maps supplied by the taxpayer to the township tax assessors through the years." *Ibid.* The court denied relief under the Correction of Errors statute, concluding "that the assignment of an erroneous area to a property is not a mistake in assessment correctable under *N.J.S.A.* 54:51A–7 unless the erroneous area results from a transpositional or typographical error." *Id.* at 85. The court determined that "mistakes in tax assessments" should be understood "to mean mistakes such as typographical errors and errors in transposing." *Id.* at 86.

In *Little Egg Harbor Township, supra,* the Township sought relief from the Township assessor's erroneous valuation of business personal property. 9 *N.J.Tax* at 317. Egg Harbor and Tuckerton are adjoining municipalities in Ocean County. American Telephone & Telegraph (AT & T) owned personal property, taxable under *N.J.S.A.* 54:4–1, in both municipalities. *Ibid.* AT & T submitted to each municipality a form listing taxable personal property in each municipality for the 1985 tax year. Each municipality submitted final tax bills to AT & T, which were timely paid. In September 1985, one-month after the deadline for filing 1985 tax appeals to the Ocean County Board of Taxation, AT & T determined that certain of its property had been listed on the 1985 form for Tuckerton, when in fact the property was located in Little Egg Harbor Township. *Id.* at 318. Egg Harbor instituted an action under the Correction of Errors statute to permit it to assess the omitted property. The Tax Court held that the alleged error sought to be corrected was "an opinion error, based upon incorrect data relied upon by the assessor, which is specifically the type of error excluded from consideration for relief under the correction of errors statute." *Id.* at 329.

In *Van Winkle, supra,* 12 *N.J.Tax* 290, the plaintiff, without opposition from the defendant, sought to reduce its real-property tax assessment for the years 1987 through 1990. For each of those years the Rutherford tax assessor had "included in his calculations the value of two adjacent parcels [that] were never a part of the subject parcel." *Id.* at 292. The State of New Jersey had condemned a substantial part of the adjacent parcels for highway purposes, and the plaintiff did not own the remaining portions. The plaintiff did not appeal the assessments to the county board of taxation, but filed a correction-of-errors complaint in January 1991. The Tax Court denied relief, holding that because the mistake was not typographical, transpositional, or a mistake in assessment, it could not grant relief. *Id.* at 298. The court equated mistakes in tax assessments with "mechanical, mathematical, clerical, or a purely administrative mistake in assessment." *Ibid.*

Some courts have viewed the Corrections of Errors statute less restrictively. In *Sabella* I, *supra*, 188 *N.J.Super.* 500, 457 *A.*2d 1220, the Appellate Division reviewed a decision of the Tax Court denying relief from an error caused by a misplaced decimal point. "The problem arose when a re-evaluation company described the property ... as having 580 front feet. In fact, it had 58.0, or fifty-eight, front feet. As a result, the property was assessed for $182,000 when the assessment should have been $40,800." *Id.* at 501. The Appellate Division understood the Tax Court to have considered itself as without jurisdiction by erroneously holding that the Corrections of Errors statute required "compliance with [the] 'underlying statutory procedure controlling tax appeals.'" *Id.* at 502 (quoting *Manczak, supra,* 2 *N.J.Tax* at 534). In *dictum,* the Appellate Division noted that "this particular statute, being remedial and prophylactic, should be liberally construed." *Id.* at 503, 457 *A.*2d 1220. The Appellate Division remanded to the Tax Court for consideration on the merits. On remand, the Tax Court held that the error was not correctable under the statute, and the taxpayer appealed. In *Sabella v. Lacey Township,* 204 *N.J.Super.* 55, 497 *A.*2d 896 (1985) (*Sabella* II), the Appellate Division reaffirmed its "prior conviction that liberal construction is required in the case of remedial legislation such as this." *Id.* at 59, 497 *A.*2d 896. The court described the error by observing that "[s]ome typist dropped a decimal point." *Ibid.* The court stated that the reference in the Correction of Errors statute to "typographical errors, errors in transposing and mistakes in tax assessments" is a "precise description of exactly what happened in this case." *Id.* at 60, 497 *A.*2d 896.

In *Red Bank Borough v. New Jersey Bell Telephone Co.,* 8 *N.J.Tax* 152 (Tax 1986), the tax district was revaluated in 1984, resulting in the defendant's entitlement to a tax refund. That result "caused [the Borough] to request the revaluation firm to re-examine defendant's assessment." *Id.* at 155. A number of errors in the assessment were discovered, including mistakes in calculation, use of improper depreciation percentages, and mis-classification of the building. The court noted that the Appellate

Division in *Sabella* II, *supra*, 204 *N.J.Super.* 55, 497 *A.*2d 896, had held that the Correction of Errors statute was to be liberally construed, but "the liberality is limited to typographical errors, errors in transposing and mistakes in tax assessments." *Id.,* 8 *N.J.Tax* at 157. The court granted relief to the Borough in its miscalculation of the assessment. "This is a mathematical error not involving judgment or opinion; therefore, under this statute as interpreted by *Sabella* [II], *supra*, it is correctable." *Ibid.* However, the court held that the choice of depreciation percentages and classifications of the building involved the judgment of the assessor. Neither error was "an obvious mistake that can be corrected by merely examining the original property record card and recalculating correct dimensions." *Id.* at 158.

*Borough of Paramus v. Etaner Enterprises,* —— *N.J.Tax* —— (Tax 1992), involved a municipality's effort to correct an inexplicable assessment error exceeding six-million dollars in the assessment of a major department store, located in a regional shopping mall, for the years 1987, 1988, and 1989. The municipality, engaged in a district-wide revaluation of its assessed properties, had engaged a revaluation firm to assist in the work. A principal in the revaluation firm had discussed the proposed 1987 assessment of the department store with its representative, and had sent a written appraisal including an estimated value of $11,827,000. That amount had also been entered on the revaluation firm's property-record card. Although the revaluation firm, the taxpayer, and the assessor anticipated that the assessment would be $11,827,000, the assessment that appeared on the tax rolls was $5,520,500.

Because the error was not discovered in time, the municipality did not file a timely appeal for any of the tax years, but instituted suit under the Correction of Errors statute. Testimony adduced at trial produced no explanation of the manner in which the mistake had occurred. The representative of the revaluation firm speculated that the error might have been attributable to an incompatibility in computer language between his firm's computer

and the computer used by the County of Bergen, to which the assessment of $11,827,000 had been transmitted. The municipality's experienced assessor likewise was unable to explain how the mistake had occurred.

Although the Tax Court initially concluded that the error was not correctable under the statute, on reconsideration the court held that the statute was applicable and that the mistake was subject to correction:

> Whatever may have been the source of the error, what comes across with shining clarity is that the assessment was a mistake. Moreover, the mistake was not an error in calculation; it was not the result of incorrect data such as the size of the improvement (Chaiken's value was developed by the income approach); it was certainly not the result of the assessor's opinion or judgment.
>
> [*Id.* at ——.]

The Tax Court went on to hold that the statute should be construed in a manner consistent with the increasingly widespread use of computers in the assessment process:

> Indeed, the court may take judicial notice that computer technology is virtually indispensable to a timely, efficient completion of a revaluation. The phenomena of computer "glitches", "crashes" and other technological obstacles to effective functioning, not to mention the hazard of lost or distorted data inherent in transmission between incompatible computers, were virtually unheard of in 1972.
>
> * * * * * * * *
>
> Thus, the phrase "mistakes in tax assessments" as used in the correction of errors statute must not only be construed liberally in light of *Sabella* I and II but the phrase must also be construed in the context of the regnant computer technology.
>
> [*Id.* at ——.]

### III

The Tax Court's generally restrictive application of the Correction of Errors statute reflects the view that the statute contemplates only the most limited category of exceptions to the standard tax-appeal procedure. We also note the conflict between the decisions rendered by the Appellate Division panels in this appeal and in *Bressler, supra*, 190 *N.J.Super.* at 101, 461 *A.*2d 1218, favoring a restrictive construction of the Correction of Errors

statute, and the panels in *Sabella* I, *supra,* 188 *N.J.Super.* at 503, 457 *A.*2d 1220, and *Sabella* II, *supra,* 204 *N.J.Super.* at 60, 497 *A.*2d 896, endorsing a broad interpretation of the statute. The differences in the interpretations of the Correction of Errors statute advocated by the Appellate Division in those cases demonstrates the tension between the routine procedure for appealing tax assessments, *N.J.S.A.* 54:3–21, and the appeal procedure authorized by the Correction of Errors statute, *N.J.S.A.* 54:51A–7. On the one hand, the standard procedure for appealing a tax assessment is rigidly constrained by concerns of finality. "In th[is] area of taxation, statutes of limitation and limitation periods play a vital role. Legislative policy has consistently followed the salutary principle that proceedings concerning tax assessments and governmental fiscal matters be brought expeditiously within established time periods." *L.S. Village, supra,* 8 *N.J.Tax* at 300–01. *See also City of Passaic v. Division of Tax Appeals,* 54 *N.J.Super.* 215, 218, 148 *A.*2d 630 (App.Div.1959) (noting "the legislative policy that proceedings involving assessments of taxes and governmental fiscal matters be brought promptly within the specified periods of time"), *certif. denied,* 29 *N.J.* 583, 150 *A.*2d 807; *Suburban Dep't Stores v. City of East Orange,* 47 *N.J.Super.* 472, 480, 136 *A.*2d 280 (App.Div.1957) ("[The tax appeal statutes] demonstrate a strong public policy that actions contesting the assessment of taxes should be brought promptly within the specified periods of time."); *St. Michael's Passionist Monastery v. City of Union City,* 5 *N.J.Tax* 415, 418 (Tax 1983) ("Compliance with statutory filing requirements is an unqualified jurisdictional imperative, long sanctioned by our courts."), *remanded,* 195 *N.J.Super.* 608, 481 *A.*2d 304 (1984); *Diament v. Borough of Fort Lee,* 3 *N.J.Tax* 70, 85 (Tax 1981) ("[P]arties must be particularly vigilant in complying with tax statutes establishing jurisdictional time limits."); *Salvation Army v. Alexandria Township,* 2 *N.J.Tax* 292, 300 (Tax 1981) ("This narrow construction is also in keeping with the basic principle that generally statutes granting exemptions from taxation are strongly construed against those seeking exemption.").

The Correction of Errors statute, on the other hand, allows relief any time during the tax year or within the three tax years thereafter. *N.J.S.A.* 54:51A–7. Potentially, the statute frustrates the goal of finality advanced by the standard tax-appeal procedure by allowing taxpayers to bypass the normal appeal process and seek relief years later. *See L.S. Village, supra,* 8 *N.J.Tax* at 304 (declaring that *N.J.S.A.* 54:51A–7 potentially "does violence to the concept of finality of assessments necessary for the predictability of revenues and the orderly financing of government"); *Flint, supra,* 6 *N.J.Tax* at 108 ("[T]he extraordinary remedy of [the Correction of Errors Statute] might quickly become a standard method of review for any taxpayer who could find a factual error on his property record card even several years after his normal appeal time has expired."); *Springfield, supra,* 3 *N.J.Tax* at 95 ("To permit plaintiff to rectify its omission by means of the correction of error statute is to \* \* \* bypass the statutory proceedings for administrative and judicial review."); *Manczak, supra,* 2 *N.J.Tax* at 534 ("The correction of errors statute also has the effect of bypassing the normal procedure for challenging assessments.").

Although we endorse the concerns reflected by the decisions that construe restrictively the scope of the Correction of Errors statute, we perceive that the statute's capacity to grant relief in cases involving unquestionable tax-assessment mistakes need not be so narrowly circumscribed. In our view, the apparent conflict between the Legislature's decision strictly to limit the time for filing tax appeals and its authorization of an extended period of time within which mistakes can be corrected can best be reconciled by construing the statute in accordance with its plain meaning. *Levin v. Township of Parsippany–Troy Hills,* 82 *N.J.* 174, 182, 411 *A.*2d 704 (1980) ("In the absence of any explicit indication of special meaning, words of a statute are to be given their ordinary and well understood meaning."). In authorizing the correction of "typographical errors, errors in transposing and mistakes in tax assessments," the Legislature's only express qualification of the judiciary's power to correct mistakes in tax assess-

ments was to exclude matters of valuation involving an assessor's opinion or judgment. We understand that exclusion as a clear expression of legislative intent to limit the statutory authorization to the correction of mistakes that are indisputable and not subject to debate about whether the assessment to be corrected resulted from an assessor's exercise of discretion.

■ The clearest examples of that category of mistaken assessments are those caused by errors concerning undebatable physical attributes of the land or structures. A simple example would be a mistaken assessment of vacant land that was calculated on the assumption that the property was improved, when in fact no improvements ever had been constructed. Whether that mistake was attributable to a typographical error, a mistake in transposing, or some other discoverable or undiscoverable cause, an over-assessment of property based on non-existent improvements ordinarily would not have occurred because of an assessor's opinion, judgment, or exercise of discretion. Moreover, because the correct assessment would be readily inferable on the basis of the underlying error, correction of so obvious a mistake in assessment is reconcilable with the predictability and procedural regularity of the tax appeal process. When such an error occurs without involvement of an assessor's exercise of discretion, and its correction is also self-evident and non-discretionary, remediation of that error pursuant to the Correction of Errors statute would effectuate the legislative goal of remedying incontestable assessment errors and avoiding manifest injustice. In our view, avoidance of obvious injustice in the assessment process was the Legislature's primary objective in enacting and amending the Correction of Errors statute.

Accordingly, we hold that mistakes in assessments that are indisputable, and cannot plausibly be explained on the basis of an exercise of judgment or discretion by the assessor or his or her staff, are within the category of mistakes that can be corrected under the statute. Based on our characterization of the category of mistaken but correctable assessments, we hold further that the

correct assessment must readily be inferable or subject to ready calculation on the basis of the assessment mistake for which correction is authorized.

## IV

Finally, we consider whether the Township's misplacing and failing to act on Hovbilt's application for farmland assessment can be remedied under the Correction of Errors statute. Hovbilt concedes that if relief under the statute is available, it would not "automatically be entitled to farmland assessment status for its property." The relief it seeks is an order requiring that the tax assessor consider Hovbilt's application for farmland assessment. We address the issue in the context of the specific provisions of the Farmland Assessment Act.

The primary purpose of the Act, authorized in 1963 by constitutional amendment, *N.J. Const.* art. VIII, § 1, ¶ 1, was to preserve the "family farm" by providing farmers with some measure of economic relief by permitting farmland to be taxed based on its value as a continuing farm and not on any other basis. *Urban Farms, Inc. v. Township of Wayne,* 159 *N.J.Super.* 61, 67, 386 *A.2d* 1357 (App.Div.1978). Other benefits such as the maintenance of open spaces and the preservation of the beauty of the countryside, although incidental to the principal objective, were also significant factors in the passage of the amendment. *Township of Andover v. Kymer,* 140 *N.J.Super.* 399, 404, 356 *A.2d* 418 (App.Div.1976); *Galloway Township v. Petkevis,* 2 *N.J.Tax* 85, 91 (Tax 1980).

The Act provides a relatively simple and straightforward mechanism for determining if property is eligible for farmland assessment. The eligibility of land for valuation, assessment, and taxation under the Act is determined separately for each tax year. *N.J.S.A.* 54:4–23.13. The owner of the land must submit an application to the assessor of the taxing district in which the land is situated on or before August 1 of the year immediately preced-

ing the tax year for which the assessment is sought, unless an extension of time is granted under *N.J.S.A.* 54:4–23.6. *Ibid.*

A number of criteria must be satisfied before the application for farmland assessment can be approved. First, the land must be actively devoted to agricultural or horticultural use. *N.J.S.A.* 54:4–23.2. Land deemed to be in agricultural use is land "devoted to the production for sale of plants and animals useful to man." *N.J.S.A.* 54:4–23.3. Examples listed in the Act include grains and feed crops, dairy products, poultry, livestock, and honey. The land is considered to be in horticultural use when devoted to the production for sale of fruits, vegetables, and nursery products. *N.J.S.A.* 54:4–23.4. In addition, the land shall be considered actively devoted to agricultural or horticultural use only if a minimum level of gross sales, prescribed by statute, has been, or by clear evidence will be, achieved. *N.J.S.A.* 54:4–23.5. Moreover, the land must have been actively devoted to agricultural or horticultural use for at least the two years immediately preceding the tax year for which the assessment is sought, *N.J.S.A.* 54:4–23.6(a), and the area of the land must not be less than five acres when measured in accordance with the Act, *N.J.S.A.* 54:4–23.6(b). The burden of proving both that the land is in agricultural or horticultural use and that the land is actively devoted to such use rests with the landowner. *See Brunetti v. Township of Lacey*, 6 *N.J.Tax* 565, 572 (Tax 1984); *Green Pond Corp. v. Township of Rockaway*, 2 *N.J.Tax* 273, 284–87 (Tax 1981), *aff'd in part*, 4 *N.J.Tax* 534 (App.Div.1982); *Kugler v. Township of Wall*, 1 *N.J.Tax* 10, 13 (Tax 1980).

If the owner presents sufficient proof to satisfy the criteria listed in *N.J.S.A.* 54:4–23.6, the tax assessor is required to value the land as farmland. In assessing the value of the land that qualifies as land actively devoted to agricultural or horticultural use, the assessor may use his or her "personal knowledge, judgment and experience as to the value of land in agricultural or horticultural use." *N.J.S.A.* 54:4–23.7. If the assessor determines that the claim for farmland assessment should be disallowed, he or

she must forward to the owner prior to November 1 of the pre-tax year a notice setting forth the reasons for denial and notice of right to appeal to the county board of taxation. *N.J.S.A.* 54:4–23.13b. The owner must appeal on or before August 15 of the tax year. *Ibid.* Hovbilt did not receive notice that its land would not be assessed as farmland, but did receive its assessment in due course. Hovbilt failed to file its appeal with the Monmouth County Board of Taxation by August 15, 1991.

The duties and responsibilities of the tax assessor under the Act are two-fold. The assessor must first determine if the land is actively devoted to agricultural or horticultural use, and whether the other statutory criteria have been met. If so, the assessor must then value the land. In performing those functions, the assessor's opinion and judgment necessarily are implicated.

Hovbilt does not claim, nor does the Township concede, that its land indisputably is entitled to assessment under the Act. The Township contended that if the application had not been misplaced, its assessor would "have [gone] out and looked at the property, would have reviewed the application, saw whether or not ... there was any proof ... the property produced ... $500 or more worth of agricultural products." Nor does the record reveal the value at which the land would have been assessed for the tax year 1991, assuming farmland assessment was warranted.

We have determined that the Correction of Errors statute permits relief from mistakes in assessment that are indisputable, under such circumstances that the correct assessment is readily inferable or subject to ready calculation on the basis of the mistake for which correction is authorized. We acknowledge that Hovbilt's property had been assessed as farmland in years prior to 1991, but the record does not inform us whether the facts underlying those assessments apply to the year in question. In any event, although the tax assessor's misplacing of the application is uncontested, we are unpersuaded that Hovbilt has established the existence of an indisputable mistake in its tax assessment, or that the relief sought is readily inferable or subject to ready calcula-

tion. Contrary to the view of our dissenting colleagues, *Post* at 625–26, 651 *A*.2d at 90–91, our conclusion in this respect rests not on the basis that an exercise of the assessor's opinion or judgment led to the denial of farmland assessment. Rather, we conclude simply that Hovbilt has not yet established that its 1991 tax assessment is erroneous, because Hovbilt conceded that the relief it seeks is a remand to the tax assessor to determine its entitlement to farmland assessment and, if appropriate, the amount of its reduced assessment. Indeed, the essential factual questions that determine whether the property is to be assessed as farmland and, if so, the value of the land have not been addressed. Because those questions may themselves result in dispute and future litigation, we cannot conclude that the "mistake in tax assessment" and the appropriate relief therefor are subjects of sufficient certainty to justify relief under the abbreviated and extraordinary procedures authorized by the Correction of Errors statute.

We do not minimize the likelihood that Hovbilt's property was incorrectly assessed for 1991. Nor do we intend to impose artificial barriers that would limit the salutary function that the Correction of Errors statute will fulfill when applied consistently with the interpretation we have adopted. We hold, however, that the tax assessor's misplacement of Hovbilt's application for farmland assessment should have been addressed through the standard tax-appeal procedure. Its consequences are not sufficiently certain so as to constitute an indisputable mistake in tax assessments; and if Hovbilt's assessment was mistaken, its correction is not necessarily readily inferable or subject to easy calculation based solely on the nature of the mistake. Accordingly, we hold that Hovbilt is not eligible for relief under the Correction of Errors statute.

Judgment affirmed.

GARIBALDI, J., dissenting.

I agree with the Court that the Correction of Errors statute, *N.J.S.A.* 54:51A–7, need not be "narrowly circumscribed." *Ante*

at 618, 651 *A.*2d at 87. I further agree "that mistakes in assessments that are indisputable, and cannot plausibly be explained on the basis of an exercise of judgment or discretion by the assessor or his or her staff, are within the category of mistakes that can be corrected under the statute." *Ante* at 618, 651 *A.*2d at 87. However, I part with the Court insofar as I find that the Howell Township Tax Assessor's Office did make such a mistake in losing or negligently misplacing Hovbilt, Inc.'s (Hovbilt's) application for farmland assessment. Accordingly, I would reverse the Appellate Division judgment. I would hold that the Correction of Errors statute entitles Hovbilt to have the Assessor's Office deem Hovbilt's farmland-assessment application timely filed.

## I

The Court has thoroughly set forth the history and cases interpreting the Correction of Errors statute. *Ante* at 604–616, 651 *A.*2d at 80–86. In 1979, the Legislature revised the statute to substantially its present form. *L.*1979 *c.* 44; *L.*1979 *c.* 114. In the statement attached to the bill that was subsequently adopted, the Senate Finance and Appropriations Committee explained: "The process was established to permit a timely correction of *administrative errors,* avoiding the need for a formal appeal to be processed. It is not intended that this process be used for settlement of challenges of an assessors [sic] opinion as to value * * *." Senate Revenue, Finance and Appropriations Committee, *Statement to Senate Bill No. 1103,* at 2 (Sept. 18, 1978) (emphasis added).

The errors that are correctable under the statute are objective errors—ones that, on the basis of simple proofs, the trial court could reasonably find occurred. Thus, in the case of a mathematical error, a taxpayer would merely have to submit the assessor's worksheets for the matter to be decided. By the same token, the statute does not allow correction of subjective errors, such as valuation decisions by an assessor. Because correction of those

types of errors requires review of the many factors that go into an assessment, the statute's special, extended statute of limitations does not apply: subjective errors are more fairly reviewed closer in time to the assessor's decision-making process.

Hence, the question in the case at bar is whether an assessor's losing or misplacing of an application is the kind of "mistake in tax assessment," or "administrative error," that the Legislature intended the statute to cover. Under the specific facts of this case, I find that the mistake of the Assessor's Office is correctable under the statute.

## II

The only witness at trial, Russell Hedden, Hovbilt's Vice President of Real Estate, testified that Hovbilt's property straddles two municipalities, Freehold and Howell Townships. He also testified that, for each of the tax years 1985 through 1990, both municipalities assessed the property as farmland on application by Hovbilt, pursuant to the Farmland Assessment Act of 1964, *N.J.S.A.* 54:4–23.1 to –23.23.

Hedden testified that in 1991 he timely filed Hovbilt's farmland assessment applications in both municipalities. Freehold granted Hovbilt's application; Howell did not. As the trial court found, the reason Howell did not grant the application is that it was "lost, misplaced, misfiled, mishandled in some fashion by the tax assessor's office." Because of that mistake, the assessor—unaware that Hovbilt had filed the application—assessed the property at full market value. As a result, the valuation increased from $16,000 in 1990 to $556,300 in 1991, and the real-estate taxes increased by over 1000% (one thousand percent), from $695 in 1990 to $9,368 in 1991. In 1992, upon Hovbilt's application, Howell once again assessed the property as farmland. The 1992 valuation of $21,000 resulted in real-estate taxes of $401.

Hovbilt did not file a timely appeal of the erroneous 1991 assessment to the County Board of Taxation. Instead, it filed this

complaint seeking relief pursuant to the Correction of Errors statute.

### III

Unlike the Court, I conclude that the Assessor's Office's loss of Hovbilt's application is indeed the type of "administrative error" for which the Correction of Errors statute provides relief. Losing a form implicates administration, not discretion. Because it does not involve an assessor's opinion or judgment, the loss of Hovbilt's application is within the category of mistakes that the Legislature thought should be correctable more expeditiously than the formal appeal process allows. *See Statement to Senate Bill No. 1103, supra,* at 2.

Indeed, the loss of Hovbilt's application is more plainly an administrative error than the "undebatable" mistake the Court cites as a "simple example" of mistakes correctable under the statute: an assessor's mistaken impression that a vacant lot had improvements constructed on it. *Ante* at 616–618, 651 *A.*2d at 86–87. Such a mistake, the Court asserts, "ordinarily would not have occurred because of an assessor's opinion, judgment, or exercise of discretion." *Ante* at 618, 651 *A.*2d at 87. The loss of a farmland-assessment application *never* occurs because of an assessor's opinion, judgment, or exercise of discretion.

Hence, the real gravamen of the Court's holding is the ease of correction: errors correctable under the statute are those whose correction is "self-evident and non-discretionary." *Ante* at 618, 651 *A.*2d at 87. Given the importance of predictability and finality in assessments, it is understandable that the Court insists on this "easily-corrected" caveat to the broadened standard it adopts today. It is also understandable that the Court does not say explicitly that the real test of correctability under the statute is ease of correction: for in that regard, the Court ignores the statute, under which it is type of error—not ease of correction—that determines whether or not a mistake is correctable.

Moreover, the Court invites confusion in naming, as "the clearest examples" of correctable mistakes, "errors concerning undebatable physical attributes of the land or structures." *Ante* at 616–618, 651 *A*.2d at 86–87. There are many such "undebatable" errors, including not only the misapprehension that property is improved, rather than vacant, but also misapprehension of the type of improvement—tool shed rather than a cottage—and misapprehension of lot size. Correction of many of such errors would not be "readily inferable or subject to ready calculation * * *." *Ante* at 618, 651 *A*.2d at 87. For example, the mere fact that an assessor undebatably relied on a map indicating that a 100–acre lot contained 200 acres does not lead to the ready calculation of the correct assessment. The correct assessment will not be simply half the original, mistaken assessment. Rather, arriving at the correct assessment will entail a whole new discretion-laden decision on the part of the assessor.

The Court ignores the facts in asserting that the relief Hovbilt seeks implicates a greater degree of judgment on the part of the tax assessor than would correction for an error concerning an undebatable physical attribute. *Ante* at 620–622, 651 *A*.2d at 88–89. To obtain a farmland assessment, a taxpayer who satisfies the substantive (farming) criteria of the Farmland Assessment Act need merely file an application with the tax assessor on a form prescribed by the Division of Taxation no later than August 1 of the preceding tax year, *N.J.S.A.* 54:4–23.6(c); *N.J.S.A.* 54:4–23.13; and *N.J.S.A.* 54:4–23.14. Once the taxpayer files the application, the remaining procedures are simple, the Court's assertions to the contrary notwithstanding. In Hovbilt's case, in 1985 through 1990, and in 1992, the assessor relied on the application to determine whether Hovbilt was entitled to farmland assessment. The Assessor's Office does not suggest that, if Hovbilt prevailed, the property would have to be revalued for farmland assessment. Indeed, because no one from the Assessor's Office testified, the record is devoid of support for the Court's assertions that the relief Hovbilt seeks is subject to calculation, and not readily inferred.

Hovbilt was diligent and timely filed the required form; as the trial court found, the Assessor's Office lost it. Given those facts, Hovbilt is entitled to the relief it seeks: a finding that Assessor's Office made an administrative "mistake[ ] in assessment[ ] that [is] indisputable, and cannot plausibly be explained on the basis of an exercise of judgment or discretion." *Ante* at 618, 651 *A.*2d at 87.

I would reverse.

Justice POLLOCK joins in this opinion.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, O'HERN and STEIN—5.

*For reversal*—Justices GARIBALDI and POLLOCK—2.